811 F.2d 651
 124 L.R.R.M. (BNA) 2565, 258 U.S.App.D.C.
309, 55 USLW 2467,
55 USLW 2496, 105 Lab.Cas. P 12,199,
8 Employee Benefits Ca 1268
 CENTRAL TOOL COMPANY,
v.
INTERNATIONAL ASSOCIATION OF MACHINISTS NATIONAL PENSION
FUND, BENEFIT PLAN A, et al., Appellants.
CENTRAL TOOL COMPANY, Appellant,
v.
INTERNATIONAL ASSOCIATION OF MACHINISTS NATIONAL PENSION
FUND, BENEFIT PLAN A, et al.
 Nos. 81-2047, 81-2056.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued June 7, 1982.
Decided Feb. 10, 1987.
 
 Denis F. Gordon, with whom David M. Ermer, Washington, D.C., was on the brief, for International Ass'n of Machinists Nat. Pension Fund, Benefit Plan A, et al., appellants in No. 81-2047 and appellees in No. 81-2056.
 Richard A. Perras, Boston, Mass., of the Bar of the Supreme Court of Massachusetts, pro hac vice by special leave of the Court, with whom Michael Joseph and Timothy Trushel, Washington, D.C., were on the brief, for Central Tool Co., appellee in No. 81-2047 and cross-appellant in No. 81-2056.
 Before WALD, Chief Judge, TAMM* and ROBINSON, Circuit Judges.
 Opinion for the Court filed by Circuit Judge SPOTTSWOOD W. ROBINSON, III.
 SPOTTSWOOD W. ROBINSON, III, Circuit Judge:
 
 
 1
 The National Pension Fund maintained by the International Association of Machinists and Aerospace Workers, AFL-CIO (IAM), cancelled all past service credits for covered employees of the Central Tool Company after it discontinued its contributions to the Fund. The company now challenges this action as violative of Section 302(c)(5) of the Labor Management Relations Act.[1] On cross-motions for summary judgment, the District Court ruled that the cancellation was arbitrary and capricious, and for that reason contravened Section 302(c)(5), insofar as it materially affects Fund determinations on satisfaction of vesting requirements by Central Tool employees, but not to the extent that it decreases their accrued benefits under the governing plan.[2] In our view, the case is controlled by the Supreme Court's decision in UMWA Health & Retirement Funds v. Robinson,[3] the central teaching of which constrains us to hold that the termination of past service credits does not impinge upon Section 302(c)(5).
 
 
 2
 * The Fund is a multi-employer,[4] open-ended,[5] defined benefit[6] trust created in 1960 pursuant to an agreement and declaration of trust between the union and employers of employees represented by affiliated locals of the union.[7] The Fund is administered by an equal number of union-designated and employer-selected trustees,[8] and is financed by employers' contributions made in accordance with collective bargaining agreements with union affiliates.[9]
 
 
 3
 Central Tool inaugurated its relations with the Fund by contributions effective July 1, 1970, pursuant to a collective bargaining agreement with IAM's Local Lodge 147, the representative of some of Central Tool's employees.[10] The participation agreement between Central Tool and the local, which was expressly incorporated into the collective bargaining agreement, listed the payments that Central Tool would be required to make to the Fund "under the Agreement and Declaration of Trust dated May 1, 1960, as amended, which has been signed by the Employer and I.A.M. Lodge in the place provided at the end of such Agreement attached hereto."[11] The terms of the pension plan agreement thus appear to have been incorporated by reference in the collective bargaining contract. The pension plan agreement provided for determination of the accrued benefits and the vesting status of each covered employee on the basis of how much "service credit" the employee possessed. Service credits were to be ascertained in accordance with Benefit Plan A, which contained rules governing the collection, investment, and distribution of the contributions of participating employers.[12] Benefit Plan A granted two types of service credit to covered employees. One was future service credit for the period during which they worked for an employer then contributing to the Fund on their behalf;[13] the other was past service credit for any period prior thereto during which they worked for the same employer if the service continued up to the point at which the employer's obligation to contribute to the Fund commenced.[14]
 
 
 4
 At the time Central Tool joined the plan,[15] Benefit Plan A featured a rule, adopted by the Fund's board of trustees pursuant to the original trust agreement, governing the amount of service credit to be retained by covered employees of employers who terminate their participation in the plan while continuing in the same or a similar line of business.[16] Section 4 of Article IX of the plan provided then, as it does now, that such employees would keep all accrued future service credits but would forfeit all accrued past service credits.[17]
 
 
 5
 In 1978, Central Tool withdrew from the plan in accordance with a new collective bargaining agreement which provided that Central Tool would establish its own pension fund for covered employees and would guarantee benefits accrued by them under Benefit Plan A.[18] Upon notification of Central Tool's withdrawal, the Fund invoked the rule cancelling past service credits.[19] Since Central Tool had undertaken in the 1978 collective bargaining agreement to act as guarantor against any loss of those benefits, the cancellation increased its liability under its own pension plan. Central Tool then brought this action against the Fund and its trustees assailing the plan's forfeiture provision, primarily under Section 302(c)(5).[20]
 
 
 6
 The District Court applied the principle, then extant in this circuit, that an eligibility rule of a Section 302(c)(5) trust fund, or its application adversely to a covered employee or group of employees, is invalid if it is arbitrary or capricious.[21] Recognizing the strong interest of Central Tool employees in retaining pension benefits they could reasonably have believed to be vested,[22] the court struck down the plan's forfeiture provision insofar as it deprived employees of their status as vested beneficiaries under the plan.[23] The court grounded this action upon the Fund's failure to demonstrate that forfeitures of vested status either served an "overriding purpose"[24] or were "actuarially necessary"[25] to prevent employers from undermining the Fund by dumping unfunded liability--through early withdrawals from the plan--after their employees had acquired substantial past service credits. At the same time, the court upheld the cancellation of past service credits for purposes of accrual benefits,[26] reasoning that any injury to Central Tool employees resulting from an incremental reduction in benefits was outweighed by the Fund's legitimate interest in preserving its financial integrity and the desirability of minimizing judicial alterations of a plan agreed upon through collective bargaining.[27] Both sides now appeal.
 
 II
 
 7
 At the outset, we must determine whether Central Tool has standing to challenge the plan's forfeiture rule under Section 302 of the Labor Management Relations Act.
 
 
 8
 The District Court derived its jurisdiction from Section 302(e), which in general terms authorizes federal district courts to "restrain violations" of Section 302.[28] There is no provision, however, indicating who may sue or be sued thereunder. Filling this interstice, courts have construed Section 302(e) to permit a contributing employer to bring suit when it has suffered or will incur injury from enforcement of plan rules or administration of the trust.[29]
 
 
 9
 In the case before us, a collective bargaining agreement has required Central Tool to establish a new pension plan preserving the accrued benefit entitlements of its employees under Benefit Plan A.[30] Application of the plan's forfeiture provision increases Central Tool's liability under its plan, and thus produces an injury we think sufficient to allow Central Tool to maintain this action.
 
 III
 
 10
 Section 302 prohibits an employer from paying anything of value to a union or other representative of employees unless the payment falls within one of the exceptions set forth therein.[31] Section 302(c)(5) validates employer-financed employee trust funds, such as Benefit Plan A, if, among other things, they operate "for the sole and exclusive benefit of the employees of [the contributing] employer and their families and dependents...."[32] Central Tool asserts that the forfeiture provision in Benefit Plan A is arbitrary and capricious, and thus does not inure to the "sole and exclusive benefit" of those designated in Section 302(c)(5).[33]
 
 
 11
 The statutory requirement embodied in this language was addressed by the Supreme Court in UMWA Health & Retirement Funds v. Robinson.[34] Resolution of Central Tool's claim, of course, must square with that decision. Moreover, since the holding in Robinson was framed on the basis of and by explicit reference to the substantial caselaw that Section 302(c)(5) had previously generated, a survey of that body of jurisprudence is essential to sound application of Robinson to the contentions Central Tool now presses.
 
 
 12
 Before Robinson, federal courts often encountered challenges to eligibility rules, or the application of such rules, promulgated for Section 302(c)(5) trust funds. With but few exceptions,[35] these courts refused to interpret Sections 302(c)(5) and 302(e) as conferring general equity jurisdiction to enforce fiduciary duties of trustees with respect to these funds, or otherwise to supervise the Funds' day-to-day administration.[36] This limitation on the role of the judiciary reflected a number of considerations: fear of overextending judicial resources in an area traditionally governed by state law;[37] concern about the absence of an explicit basis for such jurisdiction in the language or legislative history of Section 302;[38] and apprehension that a criminal statute might be construed too broadly.[39] Moreover, the legislative history of Section 302 provided some indication that Congress did not intend its enactment of this provision to establish comprehensive federal oversight of trust fund administration.[40]
 
 
 13
 Despite this reluctance to exercise jurisdiction under Section 302(e) broadly, the overwhelming majority of courts infused Section 302(c)(5) with a demand that trust fund administration not be arbitrary or capricious.[41] Although some early cases did so without reference to particular statutory language,[42] subsequent decisions identified Section 302(c)(5)'s command that qualifying trust funds must operate for the "sole and exclusive benefit" of covered employees as the source of the requirement.[43]
 
 
 14
 Courts often justified the availability of judicial review for arbitrariness as necessary to protect the "structure" of trust funds under Section 302(c)(5), but frequently failed to articulate a consistent standard governing the scope or rigor of the analysis.[44] While some courts limited review to challenges to eligibility rules on their face,[45] others focused on the putative beneficiaries affected by the trustee action complained of, and denied review unless a sizeable number faced injury.[46] Still others expanded the scope of review to include lawsuits disputing the application of an otherwise valid requirement to a single employee,[47] and courts occasionally utilized the arbitrary-or-capricious test to review trustee action alleged to be procedurally unfair.[48] Although courts normally disturbed eligibility rules or trustee actions only if they lacked a rational relationship to distribution of benefits to covered employees or to protection of the long-run financial viability of the trust fund,[49] some appeared to engage in a higher level of scrutiny to measure the validity of such rules or actions,[50] thereby blurring even more the contours of the arbitrary-or-capricious standard.[51]
 
 
 15
 In sum, courts construed Section 302(e) not to authorize federal enforcement of trustees' fiduciary obligations with respect to Section 302(c)(5) trust funds. At the same time, however, they interpreted the "sole and exclusive benefit" language in the latter section to prohibit arbitrary or capricious action by fund trustees. Because of the inherently mercurial nature of this standard and judicial indecision as to its scope and rigor, courts ultimately proved unable entirely to avoid overseeing the day-to-day administration of employee trust funds.[52]
 
 
 16
 Close scrutiny of the caselaw just chronicled underlay the Supreme Court's decision in Robinson. The plaintiffs challenged a trust fund eligibility rule, established in a collective bargaining agreement between the United Mine Workers of America and the Bituminous Coal Operators Association,[53] as arbitrary and capricious and therefore violative of Section 302(c)(5).[54] Reversing the judgment of this court in favor of the plaintiffs,[55] the Supreme Court held that the Section 302(c)(5) directive at issue--that the trust fund must operate for the "sole and exclusive benefit of employees of [the contributing] employer, and their families and dependents"--does not establish a reasonableness requirement applicable to eligibility rules or benefit levels fixed by collective bargaining.[56] The Court construed this provision to mean simply that employer contributions to the trust fund must inure solely to the benefit of protected employees and their families, and that the arbitrariness of the distribution scheme in general or of eligibility rules in particular was not a matter of judicial concern.[57]
 
 
 17
 Although the Robinson decision had the potential altogether to eviscerate the arbitrary-or-capricious standard vis-a-vis Section 302(c)(5), the Court carefully refrained from so broad a holding. Distinguishing prior cases in this circuit, the Court held that eligibility rules adopted through collective bargaining, rather than by trustees in their discretion, are not subject to a reasonableness requirement under Section 302(c)(5).[58] It follows, of course, that if the rule involved in the instant case was a product of collective bargaining, it is immune to invalidation under a reasonableness test. We turn, then, to an analysis of Robinson's impact on this case.
 
 IV
 
 18
 The origin of the forfeiture provision protested by Central Tool effectively precludes a simple or mechanical application of Robinson. Section 4 of Article IX was adopted by the fund trustees, under authority conferred by the original trust agreement, prior to Central Tool's participation in the plan.[59] The provision, however, straddles the distinction drawn by the Robinson Court; it was approved, if only implicitly, through collective bargaining with subscribing employers, including Central Tool. For three reasons we think a proper interpretation of Robinson dictates that the forfeiture provision here, like the eligibility rule upheld in Robinson, not answer to any reasonableness requirement under Section 302(c)(5).
 
 
 19
 First, we can discern no relevant difference, from the perspective of either contributing employers or covered employees, between (a) an eligibility rule established initially by a collective bargaining agreement and (b) a rule promulgated by fund trustees, as authorized in the original trust agreement, prior to the time an employer becomes a plan member pursuant to a collective bargaining agreement. In each case, the employer's entry into the plan results from collective bargaining, and the rule is part and parcel thereof. Since Robinson makes clear that Section 302 does not authorize federal courts to use a reasonableness standard to test the substantive content of an agreement reached through collective bargaining,[60] the forfeiture provision challenged by Central Tool merits no greater scrutiny on these fact than the eligibility rule upheld in Robinson.
 
 
 20
 Second, the Robinson Court limited the scope of its holding by distinguishing the two prior decisions of this circuit.[61] Examination of these cases suggests that the only question left undecided in Robinson was whether federal courts have jurisdiction under Section 302(e) to entertain challenges by a contributing employer or a covered employee to discretionary trustee actions taken unilaterally after, not before, commencement of the employer's contributory obligation.[62]
 
 
 21
 In one of these cases, Kosty v. Lewis,[63] a miner challenged a resolution, adopted by pension fund trustees after his employer assumed its funding obligation,[64] which deprived him of benefits accrued under the superseded eligibility rules.[65] Reviewing the procedural "reasonableness of the [lack of] opportunity afforded to [those persons with accrued benefits] under current standards"[66] to consider retirement before the effective date of the new standards, this court found it arbitrary and capricious to expect individuals to "work ... at their peril in terms of the possibility that pension eligibility might be wiped out ... by the sudden action of the Trustees in changing the requirements."[67] The Supreme Court's express reference to Kosty[68] militates, we think, for a construction of Robinson that recognizes the propriety of judicial review only of independent trustee revisions to a plan made after an employer signs on.[69]
 
 
 22
 The second decision that Robinson distinguished, Pete v. UMWA Welfare & Retirement Fund,[70] is consistent with this articulation of the scope of judicial review under Section 302(e). Pete involved a challenge by miners to a resolution by the trustees of the same UMWA trust fund, adopted after their employers had become participants in the plan, that deprived the miners of benefits they otherwise would have received.[71] Although the court did not expressly limit its inquiry as in Kosty, the similarity of the trustees' action in the two cases offers further support for our decision to utilize the rationale explicated in Kosty to inform our interpretation of Robinson.
 
 
 23
 The lack of explicit reference by this court in Pete or by the Supreme Court in Robinson to the rationale espoused in Kosty does not vitiate an interpretation of Robinson based thereon. The Robinson Court construed Section 302(c)(5) more restrictively than prior caselaw, and the cases chosen to illustrate the limits of the new interpretation could not have delineated the intended distinction with absolute precision or exhaustive prescience. We recognize the shortcomings inherent in any attempt to extract an understanding of Robinson from the cases limiting its holding, but we cannot ignore the deliberate selection of those cases as an indication of the Court's intent to temper its decision. We thus take the narrow focus of both Kosty and Pete as support for the proposition that Robinson did not leave undecided, but instead repudiated, the jurisdiction of federal courts under Section 302(e) to adjudicate challenges to trustee action by contributing employers who became plan members pursuant to collective bargaining agreements after the disputed action occurred.
 
 
 24
 The third reason for our holding arises from the absence of any statutory contemplation of a reasonableness requirement as a means of protecting Central Tool's employees from eligibility rules such as the forfeiture provision in issue here. The legislative history reveals that Section 302 was enacted, at least in part,[72] to protect covered employees from improper management of employee trust funds.[73] This legislative objective may well have promoted the emergence of the arbitrary-or-capricious test under Section 302(c)(5) as the best, if not the only, means by which covered employees might be shielded from arbitrary trustee actions. In cases such as this one, however, this type of review is not necessary adequately to safeguard the interests of covered employees. The eligibility rule in question already was part of Benefit Plan A when IAM and Central Tool negotiated for the company's participation in the plan. The company might have taken steps to counteract any perceived unfairness in its terms, and the union had the opportunity to shelter its members therefrom. Section 302(c)(5)(B) required the plan to be in writing and that it specify eligibility rules in detail,[74] thus ensuring that both the company and the union had sufficient knowledge of the provision to act responsively at the time they entered into their collective bargaining agreement.
 
 
 25
 We conclude, then, that whatever protection employees may need under Section 302(c)(5) against arbitrary trustee actions occurring after their employer has become a plan participant is afforded by union representation, as facilitated by the requirements of Section 302(c)(5)(B),[75] and obviates the need for judicial review of such challenges.[76] In light additionally of Robinson's observation that neither the statutory text nor the legislative history of Section 302(c)(5) warrants judicial scrutiny of eligibility requirements fixed by collective bargaining under an arbitrary-or-capricious standard, we are persuaded that a forfeiture rule embedded in a benefit plan when an employer negotiates plan membership by collective bargaining--like eligibility rules fixed initially by collective bargaining--is not subject to a reasonableness requirement under Section 302(c)(5).[77]
 
 
 26
 For these reasons, we hold that the forfeiture provision challenged by Central Tool falls within the ambit of Robinson and outside our proper authority to review. Accordingly, we need not reach the question whether the forfeiture provision in suit is arbitrary or capricious. We affirm the judgment of the District Court that the forfeiture provision is valid for benefit-accrual purposes, and reverse the judgment that the provision is invalid under Section 302(c)(5) insofar as it deprives any Central Tool employee of vested status under Benefit Plan A.
 
 
 27
 So ordered.
 
 
 
 *
 Circuit Judge Tamm participated in the consideration and decision of this case but died before preparation of this opinion
 
 
 [1]
 Labor Management Relations Act of 1947, ch. 120, Sec. 302(c)(5), 61 Stat. 157-158 (current version codified at 29 U.S.C. Sec. 186(c)(5) (1982)), quoted infra note 32
 
 
 [2]
 Central Tool Co. v. International Ass'n of Machinists Nat'l Pension Fund, Benefit Plan A, 523 F.Supp. 812 (D.D.C.1981)
 
 
 [3]
 455 U.S. 562, 102 S.Ct. 1226, 71 L.Ed.2d 419 (1982)
 
 
 [4]
 A multi-employer trust fund is one "to which more than one employer is required to contribute which is maintained pursuant to one or more collective bargaining agreements ..." 29 U.S.C. Sec. 1002(37)(A) (1982). Each participating employer makes contributions on behalf of its covered employees in accordance with its collective-bargaining obligations. See Affidavit of Alan W. Skolnick, Director of IAM National Pension Fund, Appendix to Defendants' Motion for Summary Judgment, Central Tool Co. v. International Ass'n of Machinists Nat'l Pension Fund, Benefit Plan A, Civ. No. 79-2784 (D.D.C.) (filed July 21, 1980) at 3, Record Document (R. Doc.) 40 [hereinafter cited as Skolnick Affidavit]
 
 
 [5]
 Skolnick Affidavit, supra note 4, at 3, R. Doc. 40. An open-ended trust fund is one in which "employers and employee groups are free at any time of their own choosing to apply for participation in the plan." Id
 
 
 [6]
 Id. A defined benefit trust fund is one in which "contributions by individual employers on account of hours worked by or compensated to individual employees are pooled, rather than being maintained and accounted for separately with respect to each employer or each covered employee." Id. at 4, R. Doc. 40
 
 
 [7]
 Skolnick Affidavit, supra note 4, at 1, R. Doc. 40
 
 
 [8]
 Brief for Appellees/Cross-Appellants at 2-3. Equal representation of employers and employees in administration of the Fund seemingly meets the specific command of Sec. 302(c)(5)(B), 29 U.S.C. Sec. 186(c)(5)(B) (1982)
 
 
 [9]
 Brief for Appellees/Cross-Appellants at 3
 
 
 [10]
 Brief for Appellant/Cross-Appellee at 3. After Central Tool became a participant in the plan in 1970, the Fund, in 1973, accepted certain so-called "special class" employees of Central Tool--salaried nonunion office employees--and made their coverage under the plan retroactive to 1970. See Skolnick Affidavit, supra note 4, at 10-12, R. Doc. 40
 
 
 [11]
 See Standard Form of Participation Agreement (Nov. 7, 1969), Exhibit 12 to Skolnick Affidavit, supra note 4, at 1, R. Doc. 40
 
 
 [12]
 See Central Tool Co. v. International Ass'n of Machinists Nat'l Pension Fund, Benefit Plan A, supra note 2, 523 F.Supp. at 813
 
 
 [13]
 See Brief for Appellees/Cross-Appellants at 3
 
 
 [14]
 Brief for Appellees/Cross-Appellants at 3
 
 
 [15]
 See Central Tool Co. v. International Ass'n of Machinists Nat'l Pension Fund, Benefit Plan A, supra note 2, 523 F.Supp. at 813-814 & nn. 1, 3
 
 
 [16]
 See Brief for Appellees/Cross-Appellants at 9; Reply Brief for Appellees/Cross-Appellants at 4
 
 
 [17]
 Article IX, Sec. 4, states:
 If the participation of a Contributing Employer terminates and should that employer, or its successor, thereafter continue in the same or a related business, then ... Past Service Credit based upon employment with such employer shall be cancelled retroactively.
 See I.A.M. National Pension Fund, Summary Plan Description, Benefit Plan A, Exhibit 2 to Skolnick Affidavit, supra note 4, at 112, R. Doc. 40. The plan specifies, however, that this provision does not apply to (i) employees of an employer who goes out of business; (ii) employees who stop working for an employer within 30 days after, or more than two years before, the employer's withdrawal from the plan; (iii) employees receiving pensions before the withdrawal, or who applied for pensions before the withdrawal and whose pensions had an effective date within 30 days after the withdrawal; (iv) employees who earn at least five years of future service credit through employment with another participating employer within the next eight years and before incurring a permanent break in service; and (v) employees whose bargaining unit transfers to another IAM lodge. See id. at 112-113, R. Doc. 40. Although the plan did not include all of these exceptions when Central Tool joined in 1970, the company does not rely upon any exception, but challenges generally the cancellation of past service credits, which was a basic feature of the plan before 1970 and has continued to be since. Central Tool Co. v. International Ass'n of Machinists Nat'l Pension Fund, Benefit Plan A, supra note 2, 523 F.Supp. at 813-814 & nn. 1, 3.
 
 
 [18]
 See Brief for Appellant/Cross-Appellee at 4
 
 
 [19]
 See Letter from Alan W. Skolnick, Director of IAM National Pension Fund, to Central Tool Company (Aug. 25, 1978), Exhibit B to Complaint, Central Tool Co. v. International Ass'n of Machinists Nat'l Pension Fund, Benefit Plan A, Civ. No. 79-2784 (D.D.C.) (filed Oct. 17, 1979), R. Doc. 1
 
 
 [20]
 Central Tool also attacked the forfeiture provision under the Employee Retirement Income Security Act of 1974, 29 U.S.C. Secs. 1001-1461 (1982). The District Court dismissed this claim for lack of standing, Central Tool Co. v. International Ass'n of Machinists Nat'l Pension Fund, Benefit Plan A, supra note 2, 523 F.Supp. at 814 n. 4, and Central Tool has not challenged this ruling on appeal
 
 
 [21]
 See Central Tool Co. v. International Ass'n of Machinists Nat'l Pension Fund, Benefit Plan A, supra note 2, 523 F.Supp. at 815
 
 
 [22]
 Id. at 816. The District Court relied both on the general presumption that vested rights are nonforfeitable and on the statement in plan booklets describing vesting as a "freez[ing]" of pension entitlement. The court did not take into consideration, however, the fact that Central Tool employees would not face an unexpected shortfall in benefits if Central Tool fulfills its guarantee that no employee would lose accrued pension benefits by virtue of the switch to the company's pension fund
 
 
 [23]
 Id. at 818
 
 
 [24]
 Id
 
 
 [25]
 Id. The Fund has argued vigorously on appeal that the District Court employed a form of heightened scrutiny, not mandated by prior caselaw or by the common law of trusts, when it partially invalidated the forfeiture provision as not reasonably necessary to promote a compelling Fund interest. Brief for Appellees/Cross-Appellants at 28-35. Because we decide the case on other grounds, see Part IV infra, we do not reach the merits of this claim
 
 
 [26]
 Central Tool Co. v. International Ass'n of Machinists Nat'l Pension Fund, Benefit Plan A, supra note 2, 523 F.Supp. at 818
 
 
 [27]
 Id
 
 
 [28]
 Section 302(e), 29 U.S.C. Sec. 186(e) (1982), provides:
 The district courts of the United States and the United States courts of the Territories and possessions shall have jurisdiction, for cause shown, and subject to the provisions of section 381 of title 28 (relating to notice to opposite party) to restrain violations of this section, without regard to the provisions of section 17 of title 15 and section 52 of this title, and the provisions of chapter 6 of this title.
 
 
 [29]
 See Copra v. Suro, 236 F.2d 107, 114 (1st Cir.1956); Employing Plasterers' Ass'n v. Journeymen Plasterers' Protective & Benevolent Soc'y, 279 F.2d 92, 97-98 (7th Cir.1960); Denver Metropolitan Ass'n of Plumbing Contractors v. Journeyman Plumbers & Gas Fitters, 586 F.2d 1367, 1371-1372 (10th Cir.1978); Modern Woodcrafts, Inc. v. Hawley, 534 F.Supp. 1000, 1007-1008 (D.Conn.1982)
 
 
 [30]
 Brief for Appellant/Cross-Appellee at 4
 
 
 [31]
 29 U.S.C. Secs. 186(a)-(c) (1982). Section 302(d), 29 U.S.C. Sec. 182(d) (1982), provides that any person who willfully violates any of the provisions of Sec. 302 is subject to criminal sanctions
 
 
 [32]
 Section 302(c)(5), 29 U.S.C. Sec. 186(c)(5) (1982), provides:
 The provisions of this section shall not be applicable ... with respect to money or other thing of value paid to a trust fund established by such representative, for the sole and exclusive benefit of the employees of such employer, and their families and dependents (or of such employees, families, and dependents jointly with the employees of other employers making similar payments, and their families and dependents): Provided, That (A) such payments are held in trust for the purpose of paying, either from principal or income or both, for the benefit of employees, their families and dependents, for medical or hospital care, pensions on retirement or death of employees, compensation for injuries or illness resulting from occupational activity or insurance to provide any of the foregoing, or unemployment benefits or life insurance, disability and sickness insurance, or accident insurance; (B) the detailed basis on which such payments are to be made is specified in a written agreement with the employer, and employees and employers are equally represented in the administration of such fund, together with such neutral persons as the representatives of the employers and the representatives of employees may agree upon and in the event the employer and employee groups deadlock on the administration of such fund and there are no neutral persons empowered to break such deadlock, such agreement provides that the two groups shall agree on an impartial umpire to decide such dispute, or in the event of their failure to agree within a reasonable length of time, an impartial umpire to decide such dispute shall, on petition of either group, be appointed by the district court of the United States for the district where the trust fund has its principal office, and shall also contain provisions for an annual audit of the trust fund, a statement of the results of which shall be available for inspection by interested persons at the principal office of the trust fund and at such other places as may be designated in such written agreement; and (C) such payments as are intended to be used for the purpose of providing pensions or annuities for employees are made to a separate trust which provides that the funds held therein cannot be used for any purpose other than paying such pensions or annuities.
 
 
 [33]
 Central Tool Co. v. International Ass'n of Machinists Nat'l Pension Fund, Benefit Plan A, supra note 2, 523 F.Supp. at 813
 
 
 [34]
 Supra note 3
 
 
 [35]
 See Copra v. Suro, supra note 29, 236 F.2d at 114-116; Lewis v. Mill Ridge Coals, Inc., 298 F.2d 552, 558 (6th Cir.1962); Van Horn v. Lewis, 79 F.Supp. 541, 544 (D.D.C.1948); In re Bricklayers' Local No. 1, 159 F.Supp. 37, 42 (E.D.Pa.1958). See generally Preminger & Clancy, Aspects of Federal Jurisdiction Under Sections 302(c)(5) and 302(e) of the Taft-Hartley Act--The "Sole and Exclusive Benefit" Requirement, 4 Tex.So.U.L.Rev. 1 (1976)
 
 
 [36]
 E.g., Lewis v. Hogwood, 112 U.S.App.D.C. 105, 106 n. 4, 300 F.2d 697, 698 n. 4 (1962); Bowers v. Ulpiano Casal, Inc., 393 F.2d 421, 423-426 (1st Cir.1968); Burroughs v. Board of Trustees of Pension Trust Fund for Operating Eng'rs, 542 F.2d 1128, 1130 (9th Cir.1976), cert. denied, 429 U.S. 1096, 97 S.Ct. 1113, 51 L.Ed.2d 543 (1977); Insley v. Joyce, 330 F.Supp. 1228, 1231 (N.D.Ill.1971)
 
 
 [37]
 See Bowers v. Ulpiano Casal, Inc., supra note 36, 393 F.2d at 426; Johnson v. Botica, 537 F.2d 930, 933 (7th Cir.1976). See generally Goetz, Employee Benefit Trusts Under Section 302 of Labor Management Relations Act, 59 Nw.U.L.Rev. 719, 736 (1965)
 
 
 [38]
 See Bowers v. Ulpiano Casal, Inc., supra note 36; Moses v. Ammond, 162 F.Supp. 866, 869-871 (S.D.N.Y.1958). Courts also preferred to avoid knotty issues of federal-court jurisdiction under Article III of the Constitution. See Copra v. Suro, supra note 29, 236 F.2d at 114-115
 
 
 [39]
 See generally Bowers v. Ulpiano Casal, Inc., supra note 36, 393 F.2d at 425; Sanders v. Birthright, 172 F.Supp. 895, 901 (S.D.Ind.1959)
 
 
 [40]
 There is some evidence, for example, that Congress adopted Sec. 302(e) simply to make clear the ability of federal courts to issue injunctions in otherwise appropriate situations. See 93 Cong., Rec. 4881 (1947) (statement of Sen. Morse); id. at 4807 (statement of Sen. Pepper); id. (statement of Sen. Thomas); id. at 4805 (statement of Sen. Ball). See also Bowers v. Ulpiano Casal, lnc., supra note 36, 393 F.2d at 425-426; Nedd v. UMWA, 556 F.2d 190, 202-203 (3rd Cir.1977), cert. denied, 434 U.S. 1013, 98 S.Ct. 727, 54 L.Ed.2d 757 (1978); Sanders v. Birthright, supra note 39, 172 F.Supp. at 901; Moses v. Ammond, supra note 38, 162 F.Supp. at 870-871; Comment, 72 Harv.L.Rev. 778, 780 (1959). Furthermore, the House version of this section, which would have authorized federal courts to restrain violations of trust fund "agreements," was amended before enactment to refer to injunctions against violations of Sec. 302 itself. See Bowers v. Ulpiano Casal, Inc., supra note 36, 393 F.2d at 425-426. See also Moses v. Ammond, supra note 38, 162 F.Supp. at 870 & n. 7 (restricting Sec. 302(e) by comparison with Sec. 301(a), which authorizes suits to enforce "contracts" between unions and employers)
 
 
 [41]
 Robinson v. UMWA Health & Retirement Funds, 205 U.S.App.D.C. 330, 334-335, 640 F.2d 416, 420-421 (1981); rev'd, 455 U.S. 562, 102 S.Ct. 1226, 71 L.Ed.2d 419 (1982); Riley v. MEBA Pension Trust, 570 F.2d 406, 412 (2d Cir.1977); Knauss v. Gorman, 583 F.2d 82, 88 (3d Cir.1978); Local Union No. 5 v. Mahoning & Trumbull County Trades Welfare Fund, 541 F.2d 636, 639 (6th Cir.1976); Johnson v. Botica, supra note 37, 537 F.2d at 933; Wilson v. Board of Trustees, 564 F.2d 1299, 1300 (9th Cir.1977)
 
 
 [42]
 E.g., Norton v. International Ass'n of Machinists Nat'l Pension Fund, 180 U.S.App.D.C. 176, 180-181, 553 F.2d 1352, 1356-1357 (1977); Pete v. UMWA Welfare & Retirement Fund, 171 U.S.App.D.C. 1, 9, 517 F.2d 1275, 1283 (en banc 1975); Gaydosh v. Lewis, 133 U.S.App.D.C. 274, 277, 410 F.2d 262, 265 (1969); Kosty v. Lewis, 115 U.S.App.D.C. 343, 346, 319 F.2d 744, 747 (1963), cert. denied, 375 U.S. 964, 84 S.Ct. 482, 11 L.Ed.2d 414 (1964); Danti v. Lewis, 114 U.S.App.D.C. 105, 108, 312 F.2d 345, 348 (1962)
 
 
 [43]
 E.g., Robinson v. UMWA Health & Retirement Funds, supra note 41, 205 U.S.App.D.C. at 335, 640 F.2d at 421; Adams v. New Jersey Brewery Employees' Pension Trust Fund, Local Union 843, 670 F.2d 387, 397 (3d Cir.1982); Seafarers Pension Plan v. Sturgis, 630 F.2d 218, 220-221 & n. 2 (4th Cir.1980); Souza v. Trustees of W. Conference of Teamsters Pension Trust, 663 F.2d 942, 945 (9th Cir.1981). At least one court perceived difficulty in justifying the arbitrary-or-capricious standard by reference to a statutory text, and instead found jurisdiction in the "pneumbra" of Sec. 302. Lugo v. Employees Retirement Fund of Illumination Prods. Indus., 366 F.Supp. 99, 103 (E.D.N.Y.1973)
 
 
 [44]
 See McCaffrey v. Rex Motor Transp., 672 F.2d 246, 250 (1st Cir.1982); Adams v. New Jersey Brewery Employees' Pension Trust Fund, Local Union 843, supra note 43, 670 F.2d at 397 & n. 21; Johnson v. Botica, supra note 37, 537 F.2d at 933-934; Burroughs v. Board of Trustees of Pension Trust Fund for Operating Eng'rs, supra note 36, 542 F.2d at 1130-1131
 
 
 [45]
 E.g., Lugo v. Employees Retirement Fund of Illumination Prods. Indus., 529 F.2d 251, 255 (2d Cir.), cert. denied, 429 U.S. 826, 97 S.Ct. 81, 50 L.Ed.2d 88 (1976); Modern Woodcrafts, Inc. v. Hawley, supra note 29, 534 F.Supp. at 1010
 
 
 [46]
 E.g., Burroughs v. Board of Trustees of Pension Trust Fund for Operating Eng'rs, supra note 36, 542 F.2d at 1131; Insley v. Joyce, supra note 36, 330 F.Supp. at 1232
 
 
 [47]
 E.g., Norton v. International Ass'n of Machinists Nat'l Pension Fund, supra note 42; Valle v. Joint Plumbing Indus. Bd., 623 F.2d 196, 203 & n. 15 (2d Cir.1980); Johnson v. Botica, supra note 37, 537 F.2d at 933-934; Morgan v. Mullins, 643 F.2d 1320, 1321 (8th Cir.1981); Lee v. Nesbitt, 453 F.2d 1309, 1311 (9th Cir.1972); Collins v. UMWA Welfare & Retirement Fund of 1950, 298 F.Supp. 964, 968 (D.D.C.1969), aff'd, 141 U.S.App.D.C. 387, 439 F.2d 494 (1970)
 
 
 [48]
 E.g., Burroughs v. Board of Trustees of Pension Trust Fund for Operating Eng'rs, supra note 36, 542 F.2d at 1130. See note 69 infra
 
 
 [49]
 E.g., Robinson v. UMWA Health & Retirement Funds, supra note 41, 205 U.S.App.D.C. at 334-335, 640 F.2d at 420-421
 
 
 [50]
 In Norton v. International Ass'n of Machinists Nat'l Pension Fund, supra note 42, for example, this circuit considered the same cancellation provision that is found in Article IX, Sec. 4 of Benefit Plan A and is at issue in the case at bar. The court stated that even if the provision was otherwise valid--and, implicitly, even if the provision on the whole bore a rational relationship to the Fund's purposes--it was nevertheless invalid on the facts of that case because it would be "manifestly unfair" to deprive an employee of pension benefits solely because his fellow employees changed their union affiliation. 180 U.S.App.D.C. at 182, 553 F.2d at 1358
 
 
 [51]
 The cases exemplify the vagaries inherent in judicial review under the arbitrary-or-capricious standard. Since trustees have no a priori principles by which to fashion particular requirements to govern distribution of benefits, eligibility rules inevitably will seem to be arbitrary in some sense, and judicial review of such rules under that standard thus tend to be somewhat uneven. Compare, e.g., Robinson v. UMWA Health & Retirement Funds, supra note 41, 205 U.S.App.D.C. at 337, 640 F.2d at 423 (holding that financial savings alone cannot justify challenged eligibility rule) with Gaydosh v. Lewis, supra note 42, 133 U.S.App.D.C. at 277, 410 F.2d at 265 (age requirement in eligibility rule is valid because it prevents "exhaust[ion]" of trust fund)
 
 
 [52]
 Even when applying the arbitrary-or-capricious standard courts have not been overly enthusiastic about its consistency. See, e.g., Riley v. MEBA Pension Trust, supra note 41, 570 F.2d at 412. They have recognized that it is analytically unstable, see Johnson v. Botica, supra note 37, 537 F.2d at 934, and might spawn litigation over some claims of breach of fiduciary duty, see Giordani v. Hoffmann, 295 F.Supp. 463, 471-472 (E.D.Pa.1969). Moreover, the exercise of pendent jurisdiction has threatened further inroads on the doctrine that federal courts will not enforce fiduciary duties respecting trust funds governed by Sec. 302(c)(5). See Copra v. Suro, supra note 29, 236 F.2d at 115-116; Valle v. Joint Plumbing Indus. Bd., supra note 47, 623 F.2d at 203 n. 15; Snider v. All State Adm'rs, Inc., 481 F.2d 387, 391 (5th Cir.1973), cert. denied, 415 U.S. 957, 94 S.Ct. 1484, 39 L.Ed.2d 571 (1974); Wynn v. Heller, 391 F.Supp. 507, 510 n. 7 (S.D.N.Y.1975); Insley v. Joyce, supra note 36, 330 F.Supp. at 1234; Giordani v. Hoffmann, supra, 295 F.Supp. at 471
 
 
 [53]
 UMWA Health & Retirement Funds v. Robinson, supra note 3, 455 U.S. at 563, 102 S.Ct. at 1228, 71 L.Ed.2d at 423
 
 
 [54]
 Id. at 568, 102 S.Ct. at 1230, 71 L.Ed.2d at 425-426. The rule at issue in Robinson "requir[ed] that a miner actually be receiving a pension for which he was eligible at the time of his death in order to make his survivors eligible for lifetime health benefits...." Id. The plaintiffs were widows of miners who had been eligible for pensions but, instead of retiring, had continued to work until they died. Id. at 568, 102 S.Ct. at 1230, 71 L.Ed.2d at 425
 
 
 [55]
 Robinson v. UMWA Health & Retirement Funds, supra note 41
 
 
 [56]
 UMWA Health & Retirement Funds v. Robinson, supra note 3, 455 U.S. at 570, 573, 102 S.Ct. at 1231, 1233, 71 L.Ed.2d at 427, 429
 
 
 [57]
 Id. at 570, 102 S.Ct. at 1231, 1233, 71 L.Ed.2d at 427. See generally Note, Effect of Section 302(c)(5) Trust Fund Restrictions on Labor-Management Cooperation, 1 Ga.L.Rev. 78, 93 (1966)
 
 
 [58]
 UMWA Health & Retirement Funds v. Robinson, supra note 3, 455 U.S. at 573-576, 102 S.Ct. at 1232-1234, 71 L.Ed.2d at 428-430 (distinguishing Pete v. UMWA Welfare & Retirement Fund of 1950, supra note 42; Kosty v. Lewis, supra note 42). The Court reiterated that Sec. 302(c)(5) imposes on fund trustees " 'traditional fiduciary duties,' " UMWA Health & Retirement Funds v. Robinson, supra note 3, 455 U.S. at 573 n. 12, 102 S.Ct. at 1233 n. 12, 71 L.Ed.2d at 429 n. 12 (quoting NLRB v. Amax Coal Co., 453 U.S. 322, 330, 101 S.Ct. 2789, 2794, 69 L.Ed.2d 672, 680-681 (1981)), but declined to decide whether "federal courts sitting as courts of equity are authorized to enforce" those duties. Id. We do not reach this issue, for the trustees of the IAM Fund did not breach any fiduciary duty by simply enforcing the forfeiture against the Central Tool employees
 
 
 [59]
 See text supra at notes 15-17
 
 
 [60]
 UMWA Health & Retirement Funds v. Robinson, supra note 3, 455 U.S. at 576, 102 S.Ct. at 1234, 71 L.Ed.2d at 430. The Robinson Court explained the distinction it used to limit its holding by stating that "when neither the collective-bargining process nor its end product violates any command of Congress, a federal court has no authority to modify the substantive terms of a collective-bargaining contract." Id. See also Local 50, Bakery & Confectionary Workers Union v. Local 3, Bakery & Confectionary Workers Union, 733 F.2d 229, 236 (2d Cir.1984) (Robinson "held that section 302(c)(5) does not impose a reasonableness requirement on welfare plan provisions established by collective bargaining agreement"); Sinai Hosp. v. National Benefit Fund for Hosp. & Health Care Employees, 697 F.2d 562, 568 (4th Cir.1982) (Robinson held "there was no federal rule of reasonableness limiting the type of benefit level-setting provision inserted in original trust agreements by the bargaining parties"); White v. Distributors Ass'n Warehousemen's Pension Trust, 751 F.2d 1068, 1071 (9th Cir.1985) (where challenged rule was "fixed by collective bargaining process, ... [it] is insulated from judicial review" under Sec. 302); Music v. Western Conference of Teamsters Pension Trust Fund, 712 F.2d 413, 417 (9th Cir.1983) ("the Court was careful to draw a distinction between cases like Robinson which involved collective bargaining and those where changes in eligibility levels were made unilaterally by the trustees of the fund")
 
 
 [61]
 UMWA Health & Retirement Funds v. Robinson, supra note 3, 455 U.S. at 573, 102 S.Ct. at 1233, 71 L.Ed.2d at 428-429 (distinguishing Pete v. UMWA Welfare & Retirement Fund of 1950, supra note 42; Kosty v. Lewis, supra note 42)
 
 
 [62]
 We recognized this issue in Short v. UMWA, 234 U.S.App.D.C. 247, 255 n. 12, 728 F.2d 528, 536 n. 12 (1984), but, because the eligibility requirements involved there were "fixed by a collective bargaining agreement," id. at 255, 728 F.2d at 536, we saw no need to decide "to what extent the analysis in Robinson is limited to cases in which the eligibility requirements are established by collective bargaining ...," id. at 255 n. 12, 728 F.2d at 536 n. 12. Subsequent to Robinson, several other courts have addressed this question. These courts have held that Robinson does not prohibit review of trustee actions taken after a collective bargaining agreement initiates participation in the plan. See, e.g., Sellers v. O'Connell, 701 F.2d 575, 577 (6th Cir.1983); Ponce v. Construction Laborers Pension Trust for S. Cal., 774 F.2d 1401, 1405 (9th Cir.1985), cert. denied, --- U.S. ----, 107 S.Ct. 289, 93 L.Ed.2d 263 (1986); White v. Distributors Ass'n Warehousemen's Pension Trust, supra note 56, 751 F.2d at 1071; Hurn v. Retirement Fund Trust of Plumbing, Heating & Piping Indus., 703 F.2d 386, 389 n. 2 (9th Cir.1983); Shishido v. Siu-Pacific Dist.-PMA Pension Plan, 587 F.Supp. 112, 117 (N.D.Cal.1983); see also Eddington v. CMTA-Independent Tool & Die Craftsmen, 794 F.2d 1383, 1386 (9th Cir.1986) (recognizing the distinction "between cases in which the process of collective bargaining established the eligibility requirements of the trust fund and cases in which the trustees established the eligibility requirements after the collective bargaining agreement became effective"); Norman v. UMWA Health & Retirement Funds, 755 F.2d 509, 510 (6th Cir.1985) ("[w]hile a court may not review a pension plan for reasonableness, it 'may review the administration of a pension fund to determine whether the provisions are applied in an arbitrary or capricious manner' " (quoting Moore v. Reynolds Metals Co. Retirement Program, 740 F.2d 454, 456 n. 4 (6th Cir.1984), cert. denied, 469 U.S. 1109, 105 S.Ct. 786, 83 L.Ed.2d 780 (1985) (emphasis in original))); Murn v. UMWA, 718 F.2d 359, 361 (10th Cir.1983)
 In Stewart v. National Shopmen Pension Fund, 254 U.S.App.D.C. 183, 795 F.2d 1079 (1986), this court, without discussion of Robinson, upheld under an arbitrary-or-capricious standard a pension fund's cancellation of past service credits to avoid dumping of unfunded liability. The trustee action under consideration in Stewart, however, pertained to a fund provision added subsequently to a collective bargaining agreement establishing the employer's participation in the pension fund. See Stewart v. National Shopmen Pension Fund, 235 U.S.App.D.C. 122, 127, 129, 730 F.2d 1552, 1554, cert. denied, 469 U.S. 834, 105 S.Ct. 127, 83 L.Ed.2d 68 (1984).
 
 
 [63]
 Supra note 42
 
 
 [64]
 The resolution was adopted on March 13, 1953, and made "retroactively effective as of January 29, 1953." Kosty v. Lewis, supra note 42, 115 U.S.App.D.C. at 345, 319 F.2d at 746. The employer assumed its obligation to contribute to the fund in 1950. Id. at 344, 319 F.2d at 745
 
 
 [65]
 Prior to enactment of the resolution, applicants were eligible for pension benefits if they had "completed 20 years of service in the Coal Industry." Id. at 345, 319 F.2d at 746. The 1953 resolution required 20 years of service within the 30-year period preceding the application. Id. The employee offered uncontradicted evidence that he "could have qualified for a pension" under the original standard had he elected to retire before the new rule was promulgated. Id. at 346, 319 F.2d at 747
 
 
 [66]
 Id. at 347, 319 F.2d at 748; accord, Burroughs v. Board of Trustees of Pension Trust Fund for Operating Eng'rs, supra note 36, 542 F.2d at 1131
 
 
 [67]
 Kosty v. Lewis, supra note 42, 115 U.S.App.D.C. at 347, 319 F.2d at 748
 
 
 [68]
 UMWA Health & Retirement Funds v. Robinson, supra note 3, 455 U.S. at 573, 102 S.Ct. at 1233, 71 L.Ed.2d at 429
 
 
 [69]
 The decision in Kosty v. Lewis, supra note 42, is one of several that have overturned trustee actions for procedural deficiencies. Central Tool alleges such a defect in this case on the ground that the Fund did not provide adequate notice of the forfeiture provision prior to Central Tool's withdrawal from the plan. The District Court did not reach this contention, Central Tool Co. v. International Ass'n of Machinists Nat'l Pension Fund, Benefit Plan A, supra note 2, 523 F.Supp. at 816 n. 6, and we find it not actionable under the caselaw interpreting Sec. 302(c)(5). Courts have struck down trustee actions on grounds of procedural unfairness only in the context of changes in eligibility rules adversely affecting covered employees when implemented, see Stacey v. Combs, 217 U.S.App.D.C. 96, 100, 671 F.2d 602, 606 (1982); Kosty v. Lewis, supra note 42; Palino v. Casey, 664 F.2d 854, 858-859 (1st Cir.1981); Burroughs v. Board of Trustees of Pension Trust Fund for Operating Eng'rs, supra note 36, 542 F.2d at 1131, or in situations of defective procedures for evaluation of benefits applications, see Sturgill v. Lewis, 125 U.S.App.D.C. 335, 336, 372 F.2d 400, 401 (1966); Lugo v. Employees Retirement Fund of Illumination Prods. Indus., 388 F.Supp. 997, 1002 (E.D.N.Y.1975), aff'd, 529 F.2d 251 (2d Cir.), cert. denied, 429 U.S. 826, 97 S.Ct. 81, 50 L.Ed.2d 88 (1976). In the present case, no Central Tool employee was adversely affected by the forfeiture provision when it was adopted, and the company has not represented that the Fund improperly processed any applications. We thus find Central Tool's position in this regard lacking in merit and, in light of this disposition, it is unnecessary to decide whether Central Tool employees received adequate notice of the oncoming forfeiture provision or whether the company's claim of procedural unfairness is even cognizable under Secs. 302(c)(5) and 302(e)
 
 
 [70]
 Supra note 42
 
 
 [71]
 Similarly, other cases in this circuit, e.g., Norton v. International Ass'n of Machinists Nat'l Pension Fund, supra note 42; Gaydosh v. Lewis, supra note 42; and Danti v. Lewis, supra note 42, have involved attacks by covered employees on alterations in eligibility requirements made by fund trustees after contributions began on behalf of employees that deprived them of benefits they would have received absent the new rules. Whether all decisions of this circuit have embraced the Kosty rationale, however, is not entirely clear. The Pete decision, for example, came after Roark v. Boyle, 141 U.S. App.D.C. 390, 439 F.2d 497 (1970) (Roark II ), and Roark v. Lewis, 130 U.S.App.D.C. 360, 401 F.2d 425 (1968) (Roark I ), in which the predecessor rule to that protested in Pete had been condemned as arbitrary and capricious. As did Pete and Kosty, Roark I and Roark II involved a challenge to a resolution by fund trustees apparently adopted after contributions had been made on behalf of the plaintiffs. It cannot be determined from Roark I or Roark II, however, whether the rule in fact had been effected only after plaintiffs had worked for a contributing employer, as the rule apparently embodied fund policy that predated adoption of the formal resolution
 
 
 [72]
 Congress adopted this section "to protect employees from the risk that funds contributed by their employers for the benefit of the employees and their families might be diverted to other union purposes or even to the private benefit of faithless union leaders." UMWA Welfare & Retirement Funds v. Robinson, supra note 3, 455 U.S. at 571-572, 102 S.Ct. at 1232, 71 L.Ed.2d at 428; accord, NLRB v. Amax Coal Co., supra note 58, 453 U.S. at 328-331, 101 S.Ct. at 2793-2794, 69 L.Ed.2d at 679-680; Arroyo v. United States, 359 U.S. 419, 425-426, 79 S.Ct. 864, 868, 3 L.Ed.2d 915, 919-920 (1959); United States v. Ryan, 350 U.S. 299, 303-306, 76 S.Ct. 400, 404-405, 100 L.Ed. 335, 340-341 (1956); 93 Cong.Rec. 4876-4878 (1947) (statement of Sen. Taft); id. at 4805-4806 (statement of Sen. Pepper); id. at 4805 (statement of Sen. Byrd); id. (statement of Sen. Ball). There has been no suggestion here, however, that this forfeiture provision, or similar provisions in general, inure or have inured to the advantage of the union or its leaders rather than to the benefit of covered employees and their dependents. Indeed, it would seem that the Fund trustees acted substantially to protect its members from the harsh effects of the cancellation clause. See note 76 infra
 
 
 [73]
 See 93 Cong.Rec. 4805 (1947) (statement of Sen. Ball) (pension plans under Sec. 302(c)(5) "shall be in the nature of a trust fund, so that employees receiving benefits from it will have a right to go into court to protect their interests in such benefits, if necessary"); see also id. at 4876 (statement of Sen. Taft); Insley v. Joyce, supra note 36, 330 F.Supp. at 1233. The Supreme Court recognized this objective when it stated that Congress incorporated traditional fiduciary duties into Sec. 302(c)(5). UMWA Health & Retirement Funds v. Robinson, supra note 3, 455 U.S. at 573 n. 12, 102 S.Ct. at 1233 n. 12, 71 L.Ed.2d at 429 n. 12; NLRB v. Amax Coal Co., supra note 58, 453 U.S. at 329-330, 101 S.Ct. at 2794, 69 L.Ed.2d at 680-681
 
 
 [74]
 29 U.S.C. Sec. 186(c)(5)(B) (1982)
 
 
 [75]
 Full knowledge of Benefit Plan A's forfeiture provision may be attributed to the union by analogy to the common law of trusts, which excuses a trustee from liability to a fully informed trust beneficiary for breach of duty if, absent fraudulent inducement, by conduct or statement the beneficiary has affirmed or ratified the trustee's actions. A. Scott, The Law of Trust Sec. 218 (3d ed. 1967 & Supp.1985); G. Bogert, The Law of Trusts and Trustees Sec. 688 (rev.2d ed. 1982). This doctrine lends still further support to the proposition that the arbitrary-or-capricious standard does not extend to discretionary trustee action taken prior to an employer's participation in a pension plan
 
 
 [76]
 We note, furthermore, that the disputed forfeiture provision in Benefit Plan A by its own terms operates only when a contributing employer terminates its participation in the plan. Because withdrawal presumably will occur only pursuant to a new collective bargaining agreement, it would seem that a union has two opportunities to protect its members from any anticipated unfairness in the forfeiture clause, once when the employer's participation in the plan is first agreed upon through collective bargaining and again when the employer's termination is similarly determined by negotiations between the parties. This underscores our conclusion that the arbitrary-or-capricious standard is not necessary to safeguard covered employees' interests in the Fund. Indeed, it would seem that IAM in this case has taken full advantage of its capability of protecting its members from any undesirable consequences of Central Tool's withdrawal from the plan, for it acted through collective bargaining to procure Central Tool's agreement to guarantee the accrued benefits of the members under Benefit Plan A, thereby leaving Central Tool as the sole party interested in contesting the provision in this case
 
 
 [77]
 Although the forfeiture provision is shielded from review under the arbitrary-or-capricious standard, it may of course be overturned under Sec. 302(e) if it fails to comply with any of the specific standards of Sec. 302(c)(5). UMWA Health & Retirement Funds v. Robinson, supra note 3, 455 U.S. at 573 n. 12, 102 S.Ct. at 1233 n. 12, 71 L.Ed.2d at 429 n. 12. In this case, one might conceivably argue that the forfeiture provision in Benefit Plan A violates the requirement of Sec. 302(c)(5) that contributions must operate for "the sole and exclusive benefit of the employees of [the contributing] employer," 29 U.S.C. Sec. 186(c)(5) (1982), because the Fund may use some of Central Tool's contributions to pay benefits to employees of other employers. See 29 U.S.C. Sec. 186(c)(5)(C) (1982). We believe, however, that Sec. 302(c)(5)'s explicit authorization of multi-employer trust funds, see, e.g., Huge v. Maximeadows Mining Co., 459 F.Supp. 267, 268-269 (N.D.Ala.1978), Raymond v. Hoffmann, 284 F.Supp. 596, 601 (E.D.Pa.1966), and the statement in Robinson that "[n]one of the conditions [of Sec. 302(c)(5) ] places any restriction on the allocation of the funds among the persons protected by Sec. 302(c)(5)," UMWA Health & Retirement Funds v. Robinson, supra note 3, 455 U.S. at 572, 102 S.Ct. at 1232, 71 L.Ed.2d at 428, conclusively demonstrate that eligibility rules are valid under this provision so long as they result in distribution of benefits only to employees on whose behalf contributions to the fund have been made. See, e.g., In re Typo-Publishers Outside Tape Fund, 478 F.2d 374, 375 (2d Cir.), cert. denied, 414 U.S. 1002, 94 S.Ct. 357, 38 L.Ed.2d 238 (1973); Local Union No. 5 v. Mahoning & Trumbull County Bldg. Trades Welfare Fund, supra note 41, 541 F.2d at 639; Huge v. Maximeadows Mining Co., supra, 459 F.Supp. at 269; Crawford v. Cianciulli, 357 F.Supp. 357, 368-372 (E.D.Pa.1973); Bey v. Muldoon, 223 F.Supp. 489, 495-496 (E.D.Pa.1963), aff'd, 354 F.2d 1005 (3d Cir.), cert. denied, 384 U.S. 987, 86 S.Ct. 1888, 16 L.Ed.2d 1004 (1966). See generally Insley v. Joyce, supra note 36, 330 F.Supp. at 1232; Goetz, supra note 37, at 732-736. We conclude, accordingly, that the forfeiture provision of Benefit Plan A does not contravene the "sole and exclusive benefit" requirement merely by virtue of the fact that it pertains to a multi-employer trust fund