Elmer MOLNAR, individually and as a trustee of Plumbers and Pipefitters Local Union 334 Education Fund and Bruce Auriemma, Raymond Benesky, James Corbett, Christopher Gibbon, Robert Keal, Joseph MacDonald, Dennis MacDonald, John F. MacDonald, Edward McLeavy, Anthony McLeavy, David Noonan and Clifford Tredway, individually and as participants and beneficiaries of Plumbers and Pipefitters Local Union 334 Pension, Welfare and Education Funds, and the Boards of Trustees of Pipefitters Local Union No. 274 Pension, Welfare and Education Funds respectively, and Boards of Trustees of Plumbers Local Union No. 14 Pension, Welfare and Education Funds, respectively

v.

William WIBBELT, individually and as a former trustee of Plumbers and Pipefitters Local Union 334 Pension Fund and as a trustee of Plumbers and Pipefitters Local Union 334 Welfare Fund and Education Fund respectively, and the Board of Trustees of Plumbers and Pipefitters Local Union 334 Welfare Fund, Board of Trustees Plumbers and Pipefitters Local Union 334 Education Fund, and 301 East Hanover Holding Corp., Appellants.

No. 85–5419.

United States Court of Appeals, Third Circuit.

Argued March 4, 1986.

Decided April 30, 1986.

John M. Esposito (argued), Sobel and Lyon, P.C., East Hanover, N.J., for appellants.

Timothy R. Hott (argued), Hott, Margolis & Hernandez, Jersey City, N.J., for appellees.

Before GIBBONS, BECKER and ROSENN, Circuit Judges.

## OPINION OF THE COURT

ROSENN, Circuit Judge.

In 1977 the parent union of Plumbers and Pipefitters Local Union 334 ordered the local to merge into two new local unions. The local itself merged, but its three benefit funds—pension, welfare, and education—continued to exist as separate entities. In 1983, its pension fund merged with the pension funds of the new locals. The principal issue raised in the district court and on appeal is whether the trustees of the welfare and education funds of defunct Local 334 must merge the corpus of those funds with the new locals' welfare and education funds.

The plaintiffs, generally associated with the funds of the new locals, sued in the United States District Court for the District of New Jersey seeking an order under section 302 of the Labor Management Relations (Taft-Hartley) Act, 29 U.S.C. § 141 et seq. (1982), compelling the defendants, trustees of the Local 334 funds, to merge the funds with the counterpart funds of the successor locals. The district court granted the plaintiffs' motion for summary judgment and the defendants appealed. We affirm.

### I.

In August 1977 the United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry of the United States and Canada ordered nine northern New Jersey locals chartered and affiliated with it to consolidate into two new locals thereby creating a single plumbers local and a single pipefitters local. Plumber members of Local 334 were transferred to Plumbers Local 14, and pipefitter members

of Local 334 became members of Pipefitters Local 274.[1]

Local 334 had been a party to collective bargaining agreements creating and maintaining pension, education, and welfare funds. The agreements required employers to make payments to the funds for the benefit of Local 334 members. Like Local 334, the new locals also established and maintained pension, education, and welfare funds. As Local 334's collective bargaining agreements expired, the successor locals negotiated new labor agreements which covered, among others, former members of Local 334. The employers made payments only to the benefit funds of the new locals. Between 1977 and 1983 the benefit funds of all former locals, except 334, merged with the counterpart funds of the new locals. Anomalously, although Local 334 itself had become defunct as a labor organization, its three funds remained extant. In 1983, Local 334's pension fund merged into the counterpart funds of the new locals, but its education and welfare funds did not.

The genesis of this case is the failure to merge the Local 334 education and welfare funds with the benefit funds of the new locals. The unions themselves are not parties. Plaintiffs are Elmer Molnar, a former member of Local 334, beneficiary of its education and welfare funds, and trustee of its education fund; twelve former members of Local 334 individually and as participants and beneficiaries of Local 334's three benefit funds; and the boards of trustees of the pension, welfare, and education funds of the successor locals. The defendants are William Wibbelt, individually and as a trustee of the Local 334 welfare and education funds and a former trustee of the Local 334 pension fund; the boards of trustees of the Local 334 education and welfare funds; and a New Jersey corporation (Holding Company) created to hold title to real property of the Local 334 Education Fund.

Plaintiffs filed a five-count complaint, each count alleging, *inter alia,* breach of fiduciary duty. Count one sought to compel Wibbelt to transfer to plaintiffs all books, records, and assets of the Local 334 Pension Fund (already merged with the successor pension funds). Counts two and four sought a merger of Local 334's education and welfare funds respectively with those of the successor locals. Count three sought a transfer to the plaintiff-trustees of title to all assets held by the Holding Company. Count five sought an injunctive order restraining Wibbelt from administering the Local 334 education and welfare funds. The defendants filed a counterclaim in which they alleged, *inter alia,* a breach of fiduciary duty by plaintiff trustees, unfair labor practices, and malicious prosecution.

The plaintiffs moved for summary judgment on their complaint and defendants moved for summary judgment based upon lack of subject matter jurisdiction and failure to state a claim. The district court entered summary judgment granting the injunctive relief requested by the plaintiffs. On appeal, the defendants raise three issues. They assert that the district court lacked jurisdiction to order a merger of the Local 334 welfare and education funds with those of the new locals, that the district court erred in granting summary judgment

---

1. For details of the consolidation, see *United Association of Journeymen & Apprentices of the Plumbing and Pipefitting Indus. of the United States and Canada, AFL–CIO v. Local 334, United Association of Journeymen & Apprentices of the Plumbing & Pipefitting Indus. of the United States and Canada,* 452 U.S. 615, 101 S.Ct. 2546, 69 L.Ed.2d 280 (1981), in which the Supreme Court held that the federal district courts had jurisdiction to decide Local 334's challenge to the International's consolidation order. On remand, this court affirmed the judgment of the district court sustaining the validity of the Order of Consolidation creating a single plumbers local and a single pipefitters local. *Local 334, United Association of Journeymen and Apprentices of the Plumbing and Pipe Fitting Indus. of the United States and Canada v. United Association of Journeymen and Apprentices of the Plumbing and Pipe Fitting Indus. of the United States and Canada, AFL–CIO,* 669 F.2d 129 (3d Cir.1982). These earlier proceedings are unrelated to the instant case.

for the plaintiffs, and that it erred in dismissing the defendants' counterclaim.

## II.

We first address the issues of jurisdiction and standing. The plaintiffs asserted in their complaint that section 502 of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1132 (1982), provided the jurisdictional basis for their suit. Section 502(e) unquestionably granted the district court jurisdiction over the subject matter of the plaintiffs' ERISA claims.[2] Less clear is whether the plaintiffs had standing to sue under ERISA.

Section 502(a) provides in pertinent part for a civil action:

(1) by a participant or beneficiary—
(A) for the relief provided for in subsection (c) of this section, or
(B) to recover benefits due to him under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;
(2) by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title;
(3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan

. . . .

Although the district court did not so state, the individual plaintiffs had standing as beneficaries of all three Local 334 funds. The plaintiff-trustees, however, relied on their roles as fiduciaries. Section 3(21)(A) of ERISA 29 U.S.C. § 1002(21)(A), provides that

a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets . . ., or (iii) has any discretionary authority or discretionary responsibility in the administration of such plan.

The district court held that the plaintiff-trustees had standing as fiduciaries under ERISA with respect to count one against the trustees of the 334 pension fund because, pursuant to the Pension Fund Merger Agreement, the plaintiff-trustees exercised discretionary control respecting the management and disposition of the assets of 334's pension fund.

They could not, however, establish standing for the counts against the boards of trustees of the Local 334 education and welfare funds. With respect to these funds, the plaintiff-trustees asserted standing "purely by their fiduciary relationship with the participants of the Funds." The district court held, however, that section 3 requires a fiduciary responsibility toward the defendant fund itself, not merely toward the fund's beneficiaries. Therefore, it concluded that under ERISA it lacked jurisdiction and the plaintiff-trustees lacked standing as to counts two through five. The court cited *District 65, UAW v. Harper & Row Publishers, Inc.*, 576 F.Supp. 1468 (S.D.N.Y. 1983), which held that a union could not sue under ERISA on behalf of the employees it represented because it lacked the statutorily required relationship with the fund in question. It was not a "participant, beneficiary or fiduciary." *Id.* at 1476.

The court in this case next addressed the alternate jurisdictional grounds advanced by the plaintiff-trustees, who argued that the district court had jurisdiction and they had standing under section 302 of the Taft-Hartley Act, 29 U.S.C. § 186. Section 302 forbids employers to make payments to unions, but creates an exception in section

---

**2.** ERISA Section 502(e), 29 U.S.C. § 1132(e), provides:

(e) Jurisdiction
(1) Except for actions under subsection (a)(1)(B) of this section, the district courts of the United States shall have exclusive jurisdiction of civil actions under this subchapter brought by the Secretary or by a participant, beneficiary, or fiduciary.
Subsection (a)(1)(B) is not relevant to this jurisdictional question.

302(c) for payments "to a trust fund established ... for the sole and exclusive benefit of the employees of such employer, and their families and dependents," provided that the trust fund meets certain statutory requirements. 29 U.S.C. § 186(c)(5). To comply with section 302(c)(5) of the Taft-Hartley Act, 29 U.S.C. § 186(c), each fund must be maintained "for the sole and exclusive benefit of the employees ... and their families and dependents...." Section 302 permits employers to make payments to such a fund provided that

> the detailed basis on which such payments [to the fund] are to be made is specified in a written agreement with the employer, and employees and employers are equally represented in the administration of such fund....

29 U.S.C. § 186(c)(5)(B). *See United Mine Workers of America Health & Retirement Funds v. Robinson,* 455 U.S. 562, 102 S.Ct. 1226, 71 L.Ed.2d 419 (1982).

Section 302(e) confers jurisdiction on federal district courts "to restrain violations of this section." This court has held that

> a federal district court [has] jurisdiction under the section to enforce a trust fund's compliance with the statutory standards set forth in subsection (c)(5) by eliminating those offensive features in the structure or operation of the trust that would cause it to fail to qualify for a (c)(5) exception. *Arroyo v. United States,* 359 U.S. 419, 426–27 [79 S.Ct. 864, 868–69], 3 L.Ed.2d 915 (1959); *Nedd v. UMW,* 556 F.2d 190 at 201, n. 18 (3d Cir.1977) [*cert. denied,* 434 U.S. 1013, 98 S.Ct. 727, 54 L.Ed.2d 757 (1978)]; *Blassie v. Kroger Co.,* 345 F.2d 58 (8th Cir.1965).

*Associated Contractors of Essex County, Inc. v. Laborers International Union of North America,* 559 F.2d 222, 225 (3d Cir. 1977). *See also Knauss v. Gorman,* 583 F.2d 82, 86 (3d Cir.1978). Therefore, the district court has jurisdiction if plaintiffs allege a "structural violation." *See Essex County,* 559 F.2d at 226.

The plaintiffs alleged a violation of section 302 (that funds were not used for the sole and exclusive benefit of the employees for whom they were contributed) and the district court held that it had subject matter jurisdiction over the case under this section. The court relied on *Local 50, Bakery and Confectionery Workers Union, AFL–CIO v. Local 3, Bakery and Confectionery Workers Union, AFL–CIO,* 733 F.2d 229 (2d Cir.1984), in which a successor benefit fund obtained the release by its predecessor fund of an aliquot share of trust reserves representing contributions previously made on behalf of withdrawing union members. The *Local 50* court held that because of the failure of the predecessor union's fund to transfer employer's contributions to the successor union's fund, past contributions by the employer no longer inured to the "sole and exclusive benefit" of its employees. This constituted a structural violation of section 302(c) sufficient for purposes of federal jurisdiction. *Id.* at 234–35.

Defendants unsuccessfully attempt to distinguish *Local 50* by pointing out that the members in that case voted to enter the new union, while the consolidations in the instant case were effectuated pursuant to court order. This distinction is irrelevant because the issue is not the validity of the underlying member transfers to the new locals, but the jurisdiction of the district court over the case. We hold that when plaintiffs allege a structural violation of section 302 pertaining to a trust fund established for the sole and exclusive benefit of employees, their families and dependents, the district court does not err in asserting subject matter jurisdiction. *Arroyo,* 359 U.S. at 426–27, 79 S.Ct. at 868–69; *Associated Contractors of Essex County, Inc.,* 559 F.2d at 225.

After concluding that it had jurisdiction under the Taft-Hartley Act, the district court also held that the plaintiffs had standing under the Taft-Hartley Act. The defendants argue that this is error. We disagree. Section 302

> does not indicate who may sue or who may be sued, but the legislative history suggests, in a general way, that employ-

ees, unions, trustees, and employers were all intended to be afforded the benefit and the liability of the equity jurisdiction over welfare funds, as appropriate in a particular case.

*Copra v. Suro,* 236 F.2d 107, 114 (1st Cir. 1956). Courts have held that successor trust funds can assert claims under section 302 to remedy structural violations. *See Local 50,* 733 F.2d at 235; *Alvares v. Erickson,* 514 F.2d 156, 165 (9th Cir.), *cert. denied,* 423 U.S. 874, 96 S.Ct. 143, 46 L.Ed.2d 106 (1975). These cases suggest that under section 302 the nexus between plaintiff and defendant need not be as close as that required by ERISA. We see no error in the district court's conclusion that the plaintiffs had standing and that it had subject matter jurisdiction under the Taft-Hartley Act.

### III.

■ Defendants complain because the district court awarded summary judgment to the plaintiffs on each count of the complaint. Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment is appropriate if, after all reasonable inferences are drawn in favor of the non-moving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Appellate review is plenary; this court is to apply the same standard applied by the district court. *See Goodman v. Mead Johnson & Co.,* 534 F.2d 566, 573 (3d Cir. 1976), *cert. denied,* 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977).

Count one sought transfer to the successor pension funds of all books and records of the Local 334 pension fund which, as a result of the merger, no longer exists. Plaintiffs relied on the requirement in the Pension Fund Merger Agreement that Local 334 "transfer all assets of the [pension] fund to the trustees of the [successor funds]." The district court correctly interpreted this unambiguous statement as requiring the transfer from the defunct pension fund to the successors' pension funds of anything of value and anything necessary to administer the transferred assets.

*See Britton v. Howard Savings Bank,* 727 F.2d 315, 319 (3d Cir.1984) (construction of an unambiguous written document is a matter of law in New Jersey).

The merger agreement does not, however, resolve counts two through five of the complaint concerning the Local 334 education and welfare funds. The district court granted summary judgment on these counts based on section 302 of the Taft-Hartley Act, not on the Pension Fund Merger Agreement. Analysis of the merits of these section 302 claims overlaps considerably with the foregoing analysis of the court's jurisdiction under the section. The Local 334 education and welfare funds do not meet section 302's requirements. It is undisputed that Local 334 no longer exists and that its two remaining funds are not party to any collective bargaining agreement and receive no employer contributions. All employer contributions for former Local 334 members go to the funds of the new locals. The district court therefore held that the Local 334 education and welfare funds are structurally defective in two ways. First, because Local 334 is no longer party to any collective bargaining agreement, its education and welfare funds are not receiving payments from an employer specified in a written agreement. Second, because the current employers and the current union representatives are associated only with the new funds, the funds did not comply with the statutory requirements that they be administered jointly by representatives of management and labor. The district court granted summary judgment on counts two through four and merged the assets of the Local 334 education and welfare funds with those of the new unions to remedy the structural defects. The grant of summary judgment on counts two through four in effect determined count five as well by removing the assets of the Local 334 education and welfare funds from Wibbelt's control.

■ The defendants argue that the funds should not be merged because benefits from the new welfare funds may not

equal those paid by the 334 fund, and because current 334 welfare fund beneficiaries have vested rights to benefits from that fund. These arguments are not persuasive. The district court cannot guarantee that 334 welfare fund beneficiaries will not receive decreased benefits from the new welfare funds. District courts are empowered only to correct structural defects in benefit funds, not to review the minute details of a plan to ascertain its fairness or reasonableness. *United Mine Workers of America Health & Retirement Funds v. Robinson*, 455 U.S. at 574–75, 102 S.Ct. at 1233–34. The defendants are also unable to support their argument that 334 welfare fund beneficiaries had vested rights to benefits from the fund. Unlike rights to pension benefits, rights to welfare benefits do not automatically vest as a matter of law. *See Turner v. Teamsters Local 302*, 604 F.2d 1219, 1225 (9th Cir.1979). The defendants cite cases in which claimants ground their claims to welfare benefits in contract, relying on detailed benefit plan provisions that were incorporated in collective bargaining agreements. *See International Union, United Automobile, Aerospace, and Agricultural Implement Workers of America v. Yard-man, Inc.*, 716 F.2d 1476 (6th Cir. 1983), *cert. denied*, 465 U.S. 1007, 104 S.Ct. 1002, 79 L.Ed.2d 234 (1984); *In re White Farm Equipment Co.*, 42 B.R. 1005 (D.C. N.D. Ohio 1984). The defendants cite no contractual provision that grants vested benefits to welfare fund beneficiaries.

We see no merit to the appellants' contention that the district court erred in its grant of summary judgment.

**3.** Section 503 of ERISA, 29 U.S.C. § 1133, requires benefit plans to provide administrative remedies for participants whose claims for benefits have been denied. Section 505, 29 U.S.C. § 1135, permits the Secretary of Labor to prescribe regulations concerning these administrative remedies. Courts generally apply the exhaustion doctrine to ERISA suits by requiring parties to exhaust internal administrative remedies before bringing suit. *Wolf v. National Shopmen Pension Fund*, 728 F.2d 182, 185 (3d Cir.1984); *Amato v. Bernard*, 618 F.2d 559, 567 (9th Cir.1980). This court, however, distinguishes suits alleging fiduciary breaches from

## IV.

The defendants asserted a six-count counterclaim which the district court dismissed. In count one, the defendants alleged breach of fiduciary duty by the trustees of the new benefits. *See* ERISA, §§ 401–14.[3] The defendants lack standing to bring this claim under ERISA because they are not participants, beneficiaries, or fiduciaries of any of the new benefit funds. *See ERISA*, § 502(a), *supra* at 247.

Count two alleged that the trustees of the new funds have committed unfair labor practices in violation of section 8(b)(1) of the Taft-Hartley Act, 29 U.S.C. § 158(b)(1). The Act encompasses in its definition of labor organization:

> [A]ny organization of any kind, or any agency or employee representation committee or plan, in which employees participate and which exists for the purpose, in whole or in part, of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours of employment, or conditions of employment.

29 U.S.C. § 152(5) (1982). Because the plaintiffs do not constitute a labor organization, committee, or plan as defined by the Taft-Hartley Act, count two fails to state a claim.

The third count alleged breach of fiduciary duty by plaintiff Molnar in his capacity as a trustee of the Local 334 education fund by agreeing to merge the Local 334 fund into the new local's education funds. In light of the judicially approved consolidation by the International of the Locals and the funds with their successor Locals

other ERISA suits. It likens the former to derivative suits in that the plaintiffs assert the right of the fund as if they themselves were trustees, and therefore does not apply the exhaustion requirement to such suits. *Struble v. New Jersey Brewery Employees' Welfare Trust Fund*, 732 F.2d 325, 336–37 (3d Cir.1984). In order to fall within the fiduciary suit exception and circumvent the exhaustion requirement, the complainants must establish that the trustees breached their fiduciary duties. *Id.* at 336–38. Therefore the exhaustion doctrine does not bar the defendants' allegations of breach of fiduciary duty.

and funds, and of the defendants' failure to allege damages caused by the alleged breach, the court properly dismissed this count.

Defendants also alleged malicious prosecution and abuse of process in counts four and five respectively. The latter tort is "roughly coextensive" with the former, *Matter of Borne Chemical Co., Inc.*, 16 B.R. 514, 523 (Bankr.D.N.J.1981), and elements include the requirement that the complainant prevailed in the underlying suit. *Id.; Voytko v. Ramada Inn of Atlantic City*, 445 F.Supp. 315, 322 (D.N.J.1978). The defendants had not prevailed in the underlying suit; the district court properly dismissed counts four and five.

■ Count six sought reimbursement of defendant Wibbelt for attorney fees, costs and expenses incurred in this case. He bases this claim upon provisions in the merger agreement that the trustees of the new locals' pension funds would

> undertake to include in [their] ERISA insurance coverage the Trustees of the Local 334 Pension Fund, as additional named insureds for the applicable Statute of Limitations, any premium cost therefor to be paid by the [new locals] Pension Fund[s] to the extent permitted under applicable law.

The plaintiffs argue that this count was properly dismissed because the agreement indemnifies 334 pension fund trustees only against liabilities of the former 334 pension fund. We agree. Wibbelt failed to provide any support for his position that the merger agreement entitles him to reimbursement of litigation costs.

### V.

We conclude that the district court committed no error in asserting subject matter jurisdiction and in granting summary judgment in favor of the plaintiffs. It properly dismissed the defendants' counterclaim. Accordingly, the judgment of the district court will be affirmed.