Michael A. FAGAN; Reed C. Swoope; Armando Gonzales; Raymond Emmons, Jr.; James T. McQuillan, Plaintiffs–Appellants,

and

Sheet Metal Workers International Association, Local Union No. 27, Plaintiff,

v.

NATIONAL STABILIZATION AGREEMENT OF the SHEET METAL INDUSTRY TRUST FUND; Richard E. Averill; Thomas S. Eckstrom; Kenneth Loehr; Michael Martina; Arthur R. Moore; Arlan Vollman; Howard Tasaka, Defendants–Appellees.

No. 94–2452.

United States Court of Appeals, Fourth Circuit.

Argued May 1, 1995.

Decided Aug. 1, 1995.

of Gen. Counsel, Alexandria, VA, for appellees. **ON BRIEF:** Marc A. Stefan, Butsavage & Associates, P.C., Washington, DC, for appellants. Marc E. LeBlanc, Office of Gen. Counsel, Alexandria, VA, for appellees.

Before RUSSELL and WILKINS, Circuit Judges, and LIVELY, Senior Circuit Judge of the United States Court of Appeals for the Sixth Circuit, sitting by designation.

Affirmed by published opinion. Senior Judge LIVELY wrote the opinion, in which Judge RUSSELL and Judge WILKINS joined.

## OPINION

LIVELY, Senior Circuit Judge:

The individual plaintiffs, who are members of the Sheet Metal Workers' International Association, Local Union No. 27 (Local 27), filed this class action, along with Local 27, against a sheet metal industry employee benefit plan and its administrator and trustees. The purpose of the suit was to have the court declare certain forfeiture provisions in the plan invalid and unenforceable. Following oral arguments on cross-motions for summary judgment, the district court granted the defendants' motion and dismissed the action. The court did not certify the case as a class action. Only the individual plaintiffs have appealed.

I.

A.

The plan is contained in the National Stabilization Agreement of the Sheet Metal Industry Trust Fund, known as "SASMI," also referred to herein as "the plan." From 1983 through 1994, Local 27 negotiated SASMI participation into collective bargaining agreements with contractor associations whose members had Local 27 members among their employees. Under these agreements, the employers paid contributions to the trust fund on behalf of covered employees. The parties agree that SASMI is an "employee welfare benefit plan" as defined in section 3(1) of the Employment Retirement Income

Security Act of 1974 (ERISA), 29 U.S.C. § 1002(1) (1988).

SASMI provided four benefits that are at issue in this case. None of the benefits was vested, and all were subject to forfeiture under specified circumstances. The four benefits that concern us are described as follows in the Trust Agreement: (1) the "Basic Underemployment Benefit" was a form of supplemental unemployment benefits paid to qualifying participants who were unable to work a certain number of hours in a given period as defined in the agreement; (2) the "Health and Welfare Premium Benefits" allowed plan participants to maintain health and medical insurance during periods when they did not work enough hours to be credited with contributions to the health and welfare fund; (3) the "Severance Benefits" entitled employees to basic severance benefits if they met certain prescribed conditions, and the "Ad–Hoc Severance Benefit," instituted in December 1993, entitled plan participants who retired between July 1, 1991, and June 30, 1992, to a one-time severance benefit; and (4) the SASMI "Comprehensive Assistance to Participants" (SASMI CAP) operated from 1987 to 1992, and permitted an employer who claimed to need relief from its contractual wage/benefit package to apply for reductions in wage rates or prescribed contributions. SASMI CAP requests for employer relief required approval of the fund administrator.

In February 1984, the trustees of SASMI amended the plan to incorporate the forfeiture rule that is the source of the present controversy with Local 27. As pertinent here the amended plan provides that benefits which otherwise would be payable under the plan "shall be forfeit ... when the Employee's home Local Union takes an action that terminates *or will at some future date terminate* the provisions of the Local Union's Contract requiring Contributions to be made to the SASMI Fund on the Employee's behalf. All Benefits which would have been paid or received after the date of such action, re-gardless of the action's effective date, shall be forfeited immediately[.]" (J.App. 315–16) (emphasis added). A similar forfeiture provision for severance benefits was adopted in July 1992.

### B.

The collective bargaining agreement in effect at the time of Local 27's vote to withdraw ran from June 1, 1991, to May 31, 1994. Because some of its members had become dissatisfied with SASMI's performance, Local 27 decided to negotiate a new agreement effective June 1, 1994, that would not include SASMI participation. Local 27 was required by the Standard Form Union Agreement to give notice at least 90 days before the expiration of a collective bargaining agreement if it desired to renegotiate terms of that agreement.

In December 1993, SASMI Administrator Richard Averill attended a Local 27 meeting at the invitation of Local 27's president. At this meeting, Averill advised Local 27 members that if they voted to withdraw from the SASMI Fund, they would immediately forfeit their SASMI benefits pursuant to the forfeiture provisions. Averill also sent letters to all members and employees of Local 27 who were participants in SASMI, stating, "Please remember that if Local Union 27 votes to withdraw from SASMI, under SASMI's Rules and Regulations, you will lose your SASMI Severance benefit, as well as all other SASMI benefits effective the day your Local votes to remove SASMI from the Collective Bargaining Agreement."

In January 1994, Local 27 members voted to eliminate SASMI participation from the collective bargaining agreement that Local 27 would negotiate prior to May 31. Local 27's president notified Averill in writing of the vote on January 24, 1994, and stated, "Local 27 members are expecting SASMI to honor their 1993–B * period underemployment benefit applications, as well as Health/Welfare benefit payments drawn

---

* SASMI Rules and Regulations provide that the basic underemployment benefit is payable to an eligible and qualified participant at the conclusion of a six-month "Stabilization Period" if during that period the participant was underem-ployed, that is, the participant worked fewer than the number of hours specified. There are two Stabilization Periods in each year: January 1 through June 30 is period "A," and July 1 through December 31 is period "B."

against those 93–B benefits due." Averill responded by facsimile letter on that same date, explaining that "benefits would cease from the time the local votes to eliminate SASMI." Also on January 24 Averill sent the trustees a memorandum informing them of the Local 27 members' vote.

Commencing in January 1994, SASMI began denying all applications by Local 27 members for Underemployment Benefits and Health and Welfare Benefits for the 1993–B and 1994–A periods, as well as Severance Benefits. SASMI also observed that, by operation of the forfeiture rules, Local 27 members forfeited at least $84,000 in SASMI CAP benefits. SASMI continued to demand contributions to the fund from employers of Local 27 members until the collective bargaining agreement expired on May 31, 1994, even though SASMI had cut off benefit payments.

## II.

In support of their motion for summary judgment, the plaintiffs argued that although the forfeiture provisions were clear and unambiguous they were arbitrary as written and applied. The trustees breached their fiduciary duties, the plaintiffs asserted, by invoking these forfeiture provisions immediately upon being notified of Local 27's intention to withdraw at a future date. This was particularly so, they claimed, in view of the trustees' determination to continue collecting contributions while denying benefits.

The defendants, on the other hand, argued that far from being arbitrary, there was a rational basis for their application of the plan's forfeiture provisions. The purpose of the provisions was to deter local unions from withdrawing from the fund during good times and rejoining during bad times. Such manipulation would deplete the fund. By treating a decision to withdraw at some future date as an event that triggered immediate forfeiture, the cost of withdrawing was more severe than if forfeiture were commenced at the actual date of withdrawal. Thus, the deterring effect of the provisions was increased and the fund's diminution resulting from the withdrawal was offset to a degree.

The district court accepted the defendants' rational basis argument.

## III.

### A.

The forfeiture provisions at issue were adopted in a 1984 amendment to the Rules and Regulations of SASMI. Prior to that time the forfeiture provisions did not specify that the payment of benefits would cease at the time a local union made a decision to withdraw. In 1978 SASMI attempted to effect a forfeiture of benefits with respect to members of a local union upon being notified that the union had agreed with certain employers to delete the requirement that the employers make contributions to SASMI under collective bargaining agreements that were to take effect in the future. The Secretary of Labor sued to hold the trustees liable for breach of fiduciary duties in failing to pay benefits. The Secretary argued that SASMI's interpretation of the forfeiture rule was unreasonable, and therefore arbitrary. The district court held that the trustees' construction of the plan was arbitrary and capricious. See *Donovan v. Carlough*, 576 F.Supp. 245 (D.D.C.1983), 581 F.Supp. 271 (1984), *aff'd*, 753 F.2d 166 (D.C.Cir.1985). The forfeiture provisions now before us were adopted in response to the decision in *Carlough* .

### B.

It must be remembered that this appeal concerns only welfare benefits and that such benefits are explicitly exempted from vesting obligations imposed by ERISA on pension benefits. 29 U.S.C. § 1051(1). This court recognized and emphasized this distinction between vested pension benefits and unfunded contingent welfare benefits in *Sutton v. Weirton Steel Div. of Nat'l Steel Corp.*, 724 F.2d 406, 410 (4th Cir.1983), *cert. denied*, 467 U.S. 1205, 104 S.Ct. 2387, 81 L.Ed.2d 345 (1984). Referring to the latter type benefits, the court stated that changes in such benefits by amending the plan "are not to be reviewed by fiduciary standards." *Id.* at 411. See also *Young v. Standard Oil (Indiana)*, 849 F.2d 1039, 1045 (7th Cir.), *cert. denied*,

488 U.S. 981, 109 S.Ct. 529, 102 L.Ed.2d 561 (1988); *Pope v. Central States Health and Welfare Fund,* 27 F.3d 211, 213 (6th Cir. 1994).

■ Thus, we do not apply strict fiduciary standards in determining the validity of the present forfeiture provisions of SASMI. Rather, we must determine whether the provisions comply with ERISA requirements and further the basic purpose of the plan.

The general purpose of the fund created by SASMI is to provide benefits to participants and beneficiaries. This is true of all ERISA plans. There is a more specific purpose, however. Because of the effect of fluctuations in the general economy upon the construction industry, the plan seeks to provide income to workers in the industry during slack periods when they are underemployed. The question for decision is whether the provisions denying payment of benefits effective immediately upon notification of a local union's decision to withdraw from SASMI participation, rather than at the actual date of withdrawal, further these purposes of the plan.

### IV.

Counsel for the plaintiffs concede that the forfeiture language of the plan is clear and unambiguous. Thus, the issue before us does not concern the trustees' interpretation or construction of the plan. The plaintiffs also concede that the trustees administered the forfeiture provisions in accordance with the clear language and intent of those provisions. The plaintiffs argue, nevertheless, that the provisions keying cessation of benefits to the date a local union votes to withdraw from SASMI rather than to the actual date of withdrawal is unreasonable, and therefore invalid and unenforceable.

The plaintiffs make two principal arguments in support of this position. First, they contend there is no rational relationship between the provision that forfeiture occurs immediately upon notification of a local's vote to withdraw and the purposes of the plan. Second, they assert that the district court's decision "flies in the face of" *Carlough,* a

decision that concerned forfeiture rules under SASMI.

The plaintiffs expanded on these contentions in briefs and at oral argument. We have considered these expanded arguments in reaching our decision but conclude, as set forth more fully hereafter, that our task is limited to determining whether the forfeiture provisions of the plan are "reasonable" as this court has defined that term in the ERISA context.

The defendants respond with several arguments. We will consider and discuss only those arguments required for our decision. The defendants state that it is important to keep in mind that this case is not about interpretation of a plan, because the forfeiture language is clear and unambiguous. Rather, this case concerns the trustees' "settlor function"; it is the validity of the rule itself, not its construction, that is in issue. This being so, ERISA's fiduciary standards are not controlling. The defendants argue that we should look only to whether the rule is reasonable in light of the purposes of SASMI.

### V.

#### A.

In reviewing determinations by plan administrators, we are governed by the Supreme Court's decision in *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 956–57, 103 L.Ed.2d 80 (1989). In *Firestone* the Court stated that "a denial of benefits challenged under § 1132(a)(1)(B) [of ERISA] is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." If discretion does exist, review should be deferential, and a plan administrator's determination to deny benefits may be overturned only for an abuse of that discretion.

The general purpose of the fund created by SASMI is to provide benefits to participants and beneficiaries "as determined by the Trustees." (J.App. 246) The plan also states that "the Trustees shall have the sole and absolute discretion to determine all ques-

tions of the nature, amount, duration, eligibility for and methods of providing Benefits to be provided by the Fund." (J.App. 257) The quoted language obviously clothes the trustees with broad discretion.

### B.

ERISA permits a welfare benefit plan to contain forfeiture provisions so long as they are reasonable. Thus, absent a finding that the provisions in question violate ERISA, we must uphold the defendants' actions if they are reasonable. We apply this rule of reasonableness guided by principles enunciated in other ERISA cases.

In *de Nobel v. Vitro Corp.*, 885 F.2d 1180 (4th Cir.1989), this court was concerned with the interpretation by a welfare benefit plan administrator of the plan's provisions for early retirement. A group of retired employees contended that an erroneous interpretation of the plan's provisions had resulted in a miscalculation of their benefits. Noting that in *Firestone* the Supreme Court had mandated "total abandonment" of the arbitrary and capricious standard of review applied in earlier ERISA cases, Judge Phillips stated that determinations by plan administrators are reviewed for an abuse of discretion where the plan gives them broad discretion. He then defined abuse of discretion in terms of "reasonableness." *Id.* at 1186–87.

The first factor considered by the *de Nobel* court in determining the reasonableness of an interpretation was whether the interpretation was consistent with the goals of the plan. We believe the same consideration should be our primary concern in determining whether adoption of provisions requiring no interpretation was reasonable. The *de Nobel* court stated that another factor equally applicable to interpretation and formulation of a plan provision is "whether the challenged interpretation is at odds with the procedural and substantive requirements of ERISA itself." *Id.* at 1188.

The *de Nobel* court found the "dispositive principle" in reviewing discretionary decisions to be that if the reasonableness standard is satisfied, courts cannot disturb the challenged determination as an "abuse of dis-

cretion." *Id.* The court also held the fact that an administrator's decisions to limit benefits increased the financial resources of the plan's trust fund did not suggest a conflict of interest. Trustees and administrators are required to be concerned with preservation of trust assets for all beneficiaries and participants. *Id.* at 1191.

### VI.

### A.

We agree with the defendants that the district court decision in our case does not conflict with *Carlough*. Although dicta in *Carlough* supports the plaintiffs' position here, the actual holding in *Carlough* was that the trustees' interpretation of the forfeiture provisions as then written was not supported either by the literal language of the plan, 576 F.Supp. at 249, or by implication from anything contained in SASMI's Rules and Regulations. *Id.* at 250.

The *Carlough* court was also concerned that the beneficiaries and participants had no advance notice of the interpretation that made the date of a vote to withdraw, or notification to the administrator of such a vote, the triggering date for denial of benefits. The current version of SASMI provides such advance notice by stating clearly that benefits will be forfeited immediately upon a local union's voting to withdraw.

Our decision must rest on the determination of whether the provisions for immediate forfeiture are reasonable as reasonableness has been defined by this court. The controlling question, then, is whether the provisions are consistent with the goals of the plan, there being no claim that they violate any procedural or substantive provision of ERISA.

Before stating our final conclusion we note that this court stated in *Richards v. United Mine Workers Health & Retirement Fund*, 895 F.2d 133, 135 (4th Cir.1990), that Fourth Circuit jurisprudence dictates "that if a decision would be 'arbitrary and capricious' under pre-*Bruch* standards, it would be an 'abuse of discretion' under *Bruch*." The arbitrary and capricious standard "definitely is

encompassed by 'abuse of discretion.'" *Id.* at 136.

### B.

 Although the provisions for immediate cessation of benefit payments upon a local union's decision to withdraw from SAS-MI are harsh, we cannot say that adoption of those provisions was an abuse of discretion, even as that term encompasses the arbitrary and capricious standard. During oral argument on the cross-motions for summary judgment, plaintiffs' counsel complained that the provisions were unfair. The following colloquy then ensued:

THE COURT: And if it was as unfair as you suggest, it's singular that somebody when they were renewing these collective bargaining agreements every year or whatever the term of them is, didn't say so.

MR. BUTSAVAGE: Well, Your Honor, I think that the problem, however, is the penalty provision. Every time that you would think about doing this you would look at the penalty provision, and you would say, no matter how onerous the rule might be to your—or no matter what the dissatisfaction of the membership might be—you'd be in an impossible situation of saying, I am about to—if we do this—we would forfeit these rules.

Now, at a certain point I think this particular local union—

THE COURT: Benefits, you mean.

MR. BUTSAVAGE: Benefits, I'm sorry.—would say to—well, we're going to fight. We think this rule is wrong. We do not believe that it is right.

(J.App. 98–99)

Counsel's answer appears to support the defendants' primary argument. The rule was so onerous that it actually deterred Local 27 from withdrawing from SASMI for ten years after the first provision for immediate termination of benefits was inserted in the plan in 1984. It is clear that counsel referred to the immediate cessation of benefits, not to the fact that benefits would eventually cease upon actual withdrawal, in referring to "the penalty provision." Thus, the rationale

for making termination of benefits effective immediately was vindicated in the present case. The provisions for immediate cessation of benefits deterred Local 27 from voting to withdraw during a ten-year period when the membership was dissatisfied with SASMI's operation and apparently would have voted to withdraw except for the presence of the provisions in the plan.

The immediate forfeiture provisions furthered the purposes of the plan in another way. While they denied benefits to workers who decided to withdraw, during the period between that decision and actual withdrawal they provided additional funds for payment of benefits to workers whose local unions remained in the plan. The provisions maintained a steady flow of contributions, which enhanced the stability of the trust fund and the prospects of receiving full benefits in the future for those beneficiaries and participants whose locals stayed in the plan.

On the entire record we agree with the district court that the forfeiture provisions at issue are not arbitrary and capricious, and their adoption and enforcement against Local 27 did not constitute an abuse of discretion.

*AFFIRMED.*