SHEET METAL WORKERS' INTERNA-
TIONAL ASSOCIATION, LOCAL UN-
ION NO. 19; et al., Plaintiffs,

v.

**Arthur MOORE, et al., Defendants.**

**Civil Action No. 95–00646–CKK.**

United States District Court,
District of Columbia.

Nov. 3, 1997.

Susan Lynne Carter, O'Donnell, Schwartz & Anderson, Washington, DC, for Plaintiffs.

Richard B. Sigmond, Thomas Herman Kohn, Sagot, Jennings & Sigmond, Philadelphia, PA, Nancy Spencer Hyde, Alexandria, VA, for Defendants.

## MEMORANDUM OPINION

KOLLAR–KOTELLY, District Judge.

Plaintiffs, a local sheet-metal workers' union and several of its members, allege that the trustees of the National Stabilization Agreement of the Sheet Metal Industry Trust Fund breached their fiduciary duty under the Employee Income Retirement Security Act (ERISA), 29 U.S.C. § 1104(a)(1) (1994), by unreasonably invoking the plan's forfeiture provision to deny them their benefits. Pending before the Court are the parties' cross-motions for summary judgment and supporting documents. After carefully considering the pleadings and the entire record, the Court determines that there is no genuine dispute as to material facts, see FED. R. CIV. P. 56(c); *Tao v.. Freeh,* 27 F.3d 635, 638 (D.C.Cir.1994), and grants Defendants' Motion for Summary Judgment, and denies the Plaintiffs' motion.

## I. BACKGROUND

The National Stabilization Agreement of the Sheet Metal Industry Trust Fund ("SAS-MI") is an "employee welfare benefit plan" under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1002(1). Established pursuant to § 302(c)(5) of the Labor Management Rela-

tions Act, 29 U.S.C. § 186(c)(5), *see* Compl. ¶ 5; Answer ¶ 6, SASMI is operated by a board of trustees whose individual members are "fiduciaries" under ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), and are subject to a duty to discharge their obligations for the exclusive purpose of the beneficiaries.[1] *See* Compl. ¶ 7; Answer ¶ 8. The principal benefit of SASMI is the Basic Unemployment and Underemployment Benefit, which provides benefits for eligible members who involuntarily work fewer hours than normal within a predetermined six-month period.[2] *See* Pls.' Mot. for Summ. J. Ex. 1 (SASMI Summary Plan Description). Contributions are determined as a percentage of every dollar paid in wages and fringe benefits to employees and are paid by employers directly to SASMI. *See* Ferguson Aff. ¶ 5. Applications for benefits are made after the end of a six-month period and payments are contingent on the continued eligibility of the applicant. *See* Ferguson Aff. ¶ 8.

Plaintiffs were members of Sheet Metal Workers' International Association, Local Union 19 ("Local 19"), which qualified them as "participants" and "beneficiaries" of SASMI under ERISA § 3(7)-(8), 29 U.S.C. § 1002(7)-(8), from 1975 to 1992. *See* Compl. ¶ 4. In 1984 SASMI promulgated and adopted Article IV, section 2(g) of their Rules and Regulations, which provided that all benefits would be forfeited by members and beneficiaries upon any action by a local union that terminated or in the future would terminate the local union's participation in SASMI.[3] *See* Defs.' Mot. for Summ. J. Ex. 5 (Minutes from Trustees' Meetings June, 1983; November, 1983; and February, 1984). In December 1991, Local 19 voted to with-

draw from SASMI effective January 1, 1992. *See* Compl. ¶ 27; Answer ¶ 18. In 1992 Plaintiffs filed for benefits with SASMI for the second six-month period of 1991. *See* Kelly First Decl. ¶ 5. SASMI rejected their petitions claiming that, under the forfeiture provisions, all members of Local 19 had forfeited their benefits at the time they voted to withdraw in 1991, accordingly they were not eligible to receive the requested benefits. *See* Kelly Second Decl. ¶ 5. Plaintiffs pursued the internal appeals process, and in 1994 their appeals were denied again on the basis that all members of Local 19 had forfeited their benefits eligibility immediately upon voting to withdraw from SASMI in 1991, not upon the effective date of 1992. *See id.* ¶ 7.

Plaintiffs allege that the SASMI trustees violated their fiduciary duty under ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), by unreasonably denying them benefits for a period during which their employer paid the required contributions. They claim that the forfeiture provision is arbitrary and capricious because it does not further a legitimate goal and is instead a punitive sanction on local unions that withdraw from SASMI. The trustees respond that the forfeiture provision is reasonable in that it furthers the purpose of deterring local unions from entering and leaving SASMI in order to maximize benefits and thus maintains the actuarial and financial stability of the fund. They further allege that the application of the forfeiture provision to the Plaintiffs was reasonable in that the language was clear, their prior practice had been consistent, and Local 19 knew of the forfeiture provision when it voted to withdraw from SASMI.

---

1. ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1) provides, in pertinent part:

   [A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and their beneficiaries and—

   (A) for the exclusive purpose of:
   
   (i) providing benefits to participants and their beneficiaries;
   
   (ii) defraying reasonable expenses of administering the plan
   
   . . . .
   
   (D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this subchapter.

2. SASMI divides the calendar year into two Stabilization Periods for purposes of paying benefits: Period A from January 1 to June 30 and Period B from July 1 to December 31. Compl. ¶ 18, Answer ¶ 13.

3. In 1993 SASMI amended its Rules and Regulations by relocating the pertinent passage to Article IV, section 2(a)(7). However, because the language is identical in both, and there is no dispute as to the language of the provision, the change is immaterial.

**10**

## II. DEFENDANTS ARE ENTITLED TO JUDGMENT AS A MATTER OF LAW BECAUSE THE FORFEITURE RULE IS A REASONABLE EXERCISE OF THE TRUSTEES' DISCRETION

■This Court's role is narrowly circumscribed where, as here, an employee-welfare-benefit plan "gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 956–57, 103 L.Ed.2d 80 (1989). With language that is virtually unqualified in its breadth, the SASMI Amended and Restated Agreement and Declarations of Trust provides that "[t]he Trustees shall have the sole and absolute discretion to construe the provisions of this Agreement and any construction adopted by the trustees shall be binding upon ... the Locals." Def.'s Mot. Summ. J., App. I, Ferguson Aff., Ex. 3 (Trust Agreement, art. IV, sec. 2). Moreover, the Rules and Regulations underscore the trustees' authority by declaring that they "shall also have the sole and absolute discretion to determine ... (3) entitlement to, duration, amount of, or limitations on forfeitability of or loss of benefits eligibility." *See id.*, App. I, Ferguson Aff., Ex. 2 (Rules and Regulations, art. VIII, sec. (b)(3)). Such empowering language "has been comprehended, almost invariably, as conveying 'discretionary or final authority' of the kind that courts check only for reasonableness." *Block v. Pitney Bowes, Inc.*, 952 F.2d 1450, 1453 (D.C.Cir.1992) (Ginsburg, Ruth Bader, J.) (quoting *Firestone*, 489 U.S. at 112, 109 S.Ct. at 955) (citation omitted). Indeed, the Fourth Circuit has construed the same SASMI provisions as "obviously cloth[ing] the trustees with broad discretion." *Fagan v. Agreement of Sheet Metal Indus. Trust Fund*, 60 F.3d 175, 180 (4th Cir.1995). When conducting this review, "courts will substitute their judgment for that of the trustees only if the trustees' actions are not grounded on any reasonable basis." *Stewart v. National Shopmen Pension Fund*, 795 F.2d 1079, 1083 (D.C.Cir.1986). Accordingly, this Court's inquiry begins and ends by determining wheth-

er the forfeiture provision simply is reasonable. *See Block*, 952 F.2d at 1453.

■ The forfeiture-upon-decision-to-withdrawal rule, while potentially austere, is not unreasonable as a matter of law. Rather, it promotes the actuarial stability of the fund by inhibiting local unions from strategically timing their entry and exit into the SASMI pool. The rule offers a pragmatic check on those local unions that might otherwise exploit the fund's solvency by "withdrawing from the fund during good times and rejoining during bad times." *Fagan*, 60 F.3d at 178. The rule thus preserves financial equipoise as the construction industry cycles through its economic ebb and flow.

Moreover, the Court finds a recent Fourth Circuit decision, which addressed the same issue presented here, to be persuasive. In *Fagan v. National Stabilization Agreement of Sheet Metal Industry Trust Fund*, 60 F.3d 175 (4th Cir.1995), the court found the exact SASMI provision that is at issue here to be reasonable. *See id.* at 181. Specifically, the Fourth Circuit found that the forfeiture provision's tendency to deter local unions from exiting the fund promoted the financial strength of the fund. *See id.* That court further noted that though the departing union forfeits its benefits between the time of notification and actual withdrawal, the continuing contributions that its employers make bolster the fund's strength and provide greater resources for those unions that remain in SASMI. *See id.* ("The provisions maintained a steady flow of contributions, which enhanced the stability of the trust fund and the prospects of receiving full benefits in the future for those beneficiaries and participants whose locals stayed in the plan.").

■ Plaintiffs, however, allege that SASMI's forfeiture provisions violate the trustee's fiduciary obligation to administer the fund for the "sole and exclusive benefit" of the employees. *See* 29 U.S.C. § 186(c)(5) (1994). To be sure, the forfeiture rule deprives Local 19's members of the opportunity to draw benefits during a period when their employers contributed to the SASMI fund. Yet, the "surplus" that Local 19's forfeiture generates inures to the benefit of other sheet-metal unions that continue to partici-

pate in the SASMI fund. This Circuit has previously rejected an argument akin to the one the Plaintiffs present to this Court. In *Central Tool Co. v. International Association of Machinists National Pension Fund, Benefit Plan A*, 811 F.2d 651 (D.C.Cir.1987), the court concluded that § 186(c)(5) "means simply that employer contributions to the trust fund must inure solely to the benefit of protected employees and their families and that ... eligibility rules are valid under this provision so long as they result in distribution of benefits only to employees on whose behalf contributions to the fund have been made." *Central Tool*, 811 F.2d at 659. Similarly, the SASMI provision rechannels those funds made by a withdrawing union's employers to the local unions that remain in the fund. Because " '[n]one of the conditions [of § 302(c)(5)] places any restriction on the allocation of the funds *among the persons protected by § 302(c)(5)*,' " *Central Tool*, 811 F.2d at 664 n. 77 (quoting *UMWA Health & Retirement Funds v. Robinson*, 455 U.S. 562, 572, 102 S.Ct. 1226, 1232, 71 L.Ed.2d 419, 428 (1982)) (emphasis added), the SASMI forfeiture provision is immune to Plaintiff's "sole and exclusive benefit" attack.

Plaintiffs also argue that the forfeiture provision is arbitrary and capricious because, even if the stated purposes are valid, it is not reasonably related to achieve those goals because there are less restrictive measures in the SASMI Rules and Regulations that already do so. Thus, according to Plaintiffs, the forfeiture provision acts as no more than a punitive penalty against unions that decide to leave SASMI. This argument, however, misconceives the role of judicial review of fiduciaries and the scope of the reasonableness standard. Under this calculus, it is not the role of the Court to question the wisdom of a provision or to determine if it is the best or most narrowly tailored method available to achieve its stated purpose. That another provision of the SASMI Rules and Regulations may also further the same legitimate goal does not automatically invali-

date all other provisions that do as well.[4] To find otherwise would be to eviscerate the rule of reason and transform it, in effect, into a least-restrictive-means test. Settled precedent establishes that when, as here, the trustees are granted broad discretion, so long as the provision is found to be reasonably related to a legitimate goal it must not be overturned as unreasonable. *See Block*, 952 F.2d at 1452; *Stewart*, 795 F.2d at 1083.

Nothing in *Donovan v. Carlough*, 576 F.Supp. 245 (D.D.C.1983), *aff'd*, 753 F.2d 166 (D.C.Cir.1985), mandates a contrary decision. The premium that Plaintiffs attach to *Carlough* to undergird their position warrants a careful review of that case's facts and holding. At issue in *Carlough* was the precursor to the present SASMI forfeiture provision. Unlike the one at issue in the case at bar, the former provision provided: "Benefits shall be forfeited under the following conditions: Any employee who is no longer working under a collective bargaining agreement in effect ... requiring the employer to make contributions to the National SASMI ...." *Id.* at 249. The trustees interpreted this rule to permit them to deny benefits immediately upon a local union's decision to withdraw, not its actual withdrawal. Finding an irrational incongruity between the literal language of the forfeiture provision and the trustee's application and interpretation, the *Carlough* court held:

> This interpretation cannot be supported by a literal reading of the forfeiture provision, as [the forfeiture provision] clearly focuses upon the date that the obligation to make contributions ceases and not on the day that the Trustees are notified of a decision to end the obligation at some future date. The Trustees' interpretation simply reads the definition of the term "contract" out of the Rules and Regulations.

*Id.* at 250. It was this irrational interpretation of the forfeiture provision's otherwise unambiguous language that animated the *Carlough* court's decision.

---

4. The other provision in question is Article II, sections 1 and 2 of the SASMI Rules and Regulations, which provide that newly entering local unions must meet minimum time and work requirements before becoming eligible for benefits.

Although this provision undoubtedly also deters local unions from entering and exiting SASMI, the broad discretion that the trustees enjoy permits them to adopt multiple strategies to achieve a common purpose.

The facts before the *Carlough* court in 1983 differ fundamentally from the facts that confront this Court today. In response to the *Carlough* decision, the SASMI trustees amended the plan to incorporate the current forfeiture-upon-decision-to-withdraw rule in February 1984. The present controversy, in contradistinction to the one before Judge Thomas Hogan in *Carlough,* does not center on the reasonableness of the trustees' interpretation of the forfeiture rule. In fact, the current rule cannot evince a plainer intent to effect a forfeiture immediately upon a local union's decision to withdraw. *See* SASMI Rules and Regulations, art IV, sec. 2(a)(7) ("All Benefits which would have been paid or received after the date of such action, regardless of the action's effective date, shall be forfeited immediately . . . ."). Since promulgating the modern forfeiture rule, the trustees have applied it uniformly to local unions that have elected to withdraw. *See* Def.s' Mot. for Summ. J., App. I, Aff. of Ferguson ¶ 15 (*enumerating no fewer than 21 local unions that have been subjected to the forfeiture rule*). Where, as here, there is no dispute that the trustees acted consonantly with the literal language of the forfeiture provision, *Carlough* offers only scant insight and direction.

The remaining dicta from *Carlough,* on which Plaintiffs stake great reliance, does not militate a different result. Once again, the centrality of *Carlough* to Plaintiffs' motion justifies detailed scrutiny of that case. Maintaining that *Carlough* has already determined in the negative whether a forfeiture-upon-decision-to-withdraw rule manifests a rational relationship to the goals of the SASMI fund, Plaintiffs seize upon the following passage:

> [T]here is no rational relationship between the date of decision to end the contractual obligation or the date of notification of such a decision, and the date that the contractual obligation actually terminates. . . .
>
> . . . :
>
> . . . [T]here is no predictable relationship between the date on which the local union decides to leave SASMI or the date on which it officially notifies SASMI of its decision to leave, and the date on which it actually leaves.

*Carlough,* 576 F.Supp. at 250–51.

Plaintiffs' argument, however, is conceived in a vacuum; any proper understanding of the above-quoted language must be informed by the *Carlough* court's previous finding that the trustees' interpretation of the former forfeiture provision belied its literal language. Of fundamental importance, the *Carlough* court first determined that the former forfeiture provision "clearly focus[ed] upon the date that the obligation to make contributions cease[d] and not on the day that the Trustees [were] notified of a decision to end the obligation at some future date." *Id.* at 250. Having determined the forfeiture provision's precise meaning, only then did the court proceed to announce that the trustees' forfeiture-upon-notice-of-withdrawal interpretation lacked a rational basis to the plan's literal language. Here, as noted earlier, the forfeiture provision has been amended to reflect the interpretation that the trustees advanced in *Carlough.* Thus, in the case at bar, there is a manifestly clear relationship between the language of the new forfeiture provision and the trustees' actions.

## III. CONCLUSION

Because the provision at issue here is reasonably related to a legitimate goal and has been applied consistently to the Plaintiffs in accordance with its clear language, Defendants are entitled to judgment as a matter of law. Defendants' Motion for Summary Judgement is granted. For the same reasons, Plaintiffs' Motion for Summary Judgement is denied.

*An Order accompanies this Memorandum Opinion.*

## ORDER

For the reasons expressed in the Court's accompanying Memorandum Opinion, it is, this 3 day of November, 1997, hereby

**ORDERED** that Plaintiffs' Motion for Summary Judgment is **DENIED;** and it is

FURTHER ORDERED that Defendants' Motion for Summary Judgment is **GRANTED**; and it is

FURTHER ORDERED that Judgment is entered in favor of Defendants on all counts set forth in Plaintiffs' Complaint; and it is

FURTHER ORDERED that any and all extant motions are hereby **MOOT**; and it is

FURTHER ORDERED that the above-captioned case shall be, and hereby is, **DISMISSED WITH PREJUDICE** from the dockets of this Court.